Ernest W. STILLER, Appellant
(Plaintiff Below),

v.

LA PORTE HOSPITAL, INC., Appellee
(Defendant Below).

No. 75A03–9008–CV–329.

Court of Appeals of Indiana,
Third District.

April 25, 1991.

8. The partial summary judgment was amended by the court entering final judgment in favor of Fred on March 28, 1990.

James H. Pankow, South Bend, for appellant.

Geoffrey Segar, Myra C. Selby, Jerome P. Kelly, Ice Miller Donadio & Ryan, Indianapolis, for appellee.

STATON, Judge.

Ernest Stiller appeals the trial court decision to affirm the peer review determination of the LaPorte Hospital Board of Directors (Hospital) revoking his medical staff privileges. Stiller raises the following issues for our review:

I. Whether Stiller received adequate notice pursuant to Hospital bylaws and due process standards.

II. Whether the administrative determination was arbitrary and capricious or unsupported by substantial evidence.

III. Whether the Hospital failed to comply with bylaw procedural requirements.

IV. Whether the Hospital's determinations of November 19, 1985 and April 23, 1986 were contrary to law.

V. Whether the trial court erred by conducting a trial *de novo*.

We affirm.

On January 5, 1985, the Chairman of the Pharmacy and Therapeutics Committee notified Stiller, an orthopedic surgeon, that the documentation of a patient medical chart was incomplete. An ad hoc committee was formed on June 14, 1985, to review concerns about Stiller's hospital practices. On July 1, 1985, Rodney Mannion, M.D., Chairman of the Department of Surgery and ad hoc committee member, advised Stiller of the appropriate procedure for taking follow-up X-ray reports, and requested a

summary of Stiller's methods for antibiotic usage. In reply, Stiller wrote a letter decrying the need for follow-up X-rays, and did not comment on his usage of antibiotics.

On September 12, 1985, Mannion and Thomas Calvin, M.D., President of the Hospital Medical Staff, wrote to Stiller to voice their concern that the quality of care Stiller provided to his patients had lessened. In this letter, Drs. Mannion and Calvin requested a written response by October 15, 1985, and advised Stiller that formal corrective action could be taken. Stiller responded on the due date, summarizing the treatment given to his patients, claiming that such treatment was appropriate. Mannion and Calvin asked for further clarification, including the specific plans for antibiotic usage and for published copies of medical literature which supported Stiller's approach. Stiller responded with a request for additional time in order to obtain the requested information.

After Stiller failed to attend a November 12, 1985 meeting where he was to have defended his treatment of two patients, Hospital President Leigh Morris requested that the Medical Staff Executive Committee consider corrective action against Stiller. Upon receiving the request, Calvin initiated an investigation in a letter to Mannion dated November 13, 1985. On that same day, Mannion wrote to Stiller to inform him of the increased concerns about his medical procedures, and to advise Stiller that he should appear at an upcoming meeting to discuss some of his cases. Stiller did in fact appear at the November 18th meeting, and attempted to justify his procedure in five cases. Mannion completed his investigation later that day and concluded, in a letter to Calvin, that corrective action was warranted.

On November 19, 1985, the Executive Committee unanimously recommended that Stiller undergo treatment in the Indiana State Medical Association's Impaired Physician Program, and that Stiller's privileges be suspended until such time as he successfully completed the program. In a special session later that day, the Hospital Board of Directors unanimously approved the Committee's recommendations. One week later Stiller requested reinstatement and a hearing to contest the determination of the Board of Directors. His request for reinstatement was denied, but a hearing was scheduled for December 5, 1985. The parties agreed to delay the hearing until February 15, 1986, so that Stiller could review records and interview prospective witnesses.

On February 5, 1986, Stiller and his attorney reviewed medical charts that were to be used against him at the hearing. Three days later, Stiller again reviewed the charts and interviewed Dr. Frank Zahrt, Chairman of the Credentials Committee, who had reviewed the charts to prepare for the hearing. On February 10, 1986, Stiller received copies of documents relevant to his petition, including notecards that Zahrt had made for each medical chart.

The evidentiary hearing took place on February 15, 1986, before the Executive Committee. On March 27, 1986, the Committee unanimously resolved to revoke Stiller's staff privileges, and made its report and recommendation to the Board of Directors the following day. Prior to taking final action, the Board allowed Stiller to appeal the Committee's findings. Stiller presented his case to the Board on April 23, 1986. The Board unanimously approved the Committee's recommendation to revoke Stiller's privileges. Stiller filed suit to set aside the Board's action on May 13, 1986. The trial court affirmed the decision of the Board on July 5, 1990.

### Standard of Review

The decision of a private hospital concerning staff privileges is accorded great deference. *Kiracofe v. Reid Memorial Hosp.* (1984), Ind.App., 461 N.E.2d 1134. The role of the court in such a case is limited to a determination of whether the hospital complied with the procedures set out in its bylaws. *Id.* Once it is determined that the hospital has followed the procedures in its bylaws, any decision reached by the hospital board is not subject to judicial review. *Id.*

## I.

■ Stiller first asks this court to determine that the notice he received of the charges against him was inadequate under due process standards. The trial court concluded that Stiller had no constitutional due process rights because the Hospital is a private institution. As this court held in *Friedman v. Memorial Hosp. of South Bend, Inc.* (1988), Ind.App., 523 N.E.2d 252, 253, "absent some state action, the due process rights found within the Fifth and Fourteenth Amendments are inapplicable" to a suit against a private hospital.

■ Stiller does not seriously contend that the proceeding to revoke his staff privileges involved state action; rather, he maintains that the Hospital bylaws afford commensurate rights. Whether this is true or not, our role on appeal is restricted to a determination of whether the hospital administration adhered to such bylaw procedures. *Kiracofe, supra*, at 1139. In making such a determination, the test is one of substantial rather than strict compliance. *Friedman, supra*, at 253 (citing *Terre Haute Regional Hosp., Inc. v. El–Issa* (1984), Ind.App., 470 N.E.2d 1371, *trans. denied* ).

■ Stiller claims that the Hospital failed to comply with the procedures found in the Indiana Administrative Adjudication Act (AAA). He believes the AAA governs the peer review process by virtue of the following language from the preamble to the Fair Hearing Plan (FHP) adopted by the bylaws:

Although the provisions of the Indiana Administrative Adjudication [sic] are not applicable to this Hospital, since it is not an agency of the State of Indiana, nevertheless, the provisions in that act for administrative reviews and appeals therefrom are well understood in the State of Indiana, and generally accepted as establishing fair procedures for such hearings and appeals. Therefore, the format for hearings and appeals under that act will, insofar as reasonably applicable to this Hospital be followed.

We do not find this language capable of the interpretation that the Hospital has declared the AAA applicable to the peer review proceeding; on the contrary, the Hospital explicitly disavows the applicability of the AAA. The plain language of the preamble merely adopts the format of the AAA that is "reasonably applicable" to the Hospital. Moreover, this court has held that the AAA applies only to state-wide administrative bodies, and will decide the case on general administrative law principles, even where parties stipulate to be bound by the Act. *Yunker v. Porter County Sheriff's Merit Bd.* (1978), 178 Ind. App. 364, 382 N.E.2d 977. The Hospital is not a state-wide administrative body.

We may also infer from the language of the preamble that if the Hospital established notice and hearing procedures, the AAA format for the same procedures would not, to the extent that they differ, be "reasonably applicable." As stated above, the Hospital adopted the FHP and appended it to the bylaws. Bylaw 9.1. Pursuant to the FHP, whenever a decision has been made which entitles a person to an evidentiary hearing, the person desiring the hearing may make a written request that he be informed of the reasons for the decision, and where appropriate, the acts or omissions complained of, a list of medical records being questioned, or any other reasons for the decision. FHP 3.1. Such information shall be furnished to the person as promptly as reasonably possible. *Id.*

■ Stiller asserts that the Hospital failed to comply with this provision, as there was an unreasonable delay between the date of his request and the date he received notice of even the *general* subject matter of the hearing. The evidence belies this assertion. Hospital staff members informed Stiller of his practice deficiencies as early as January 4, 1985. On July 1, 1985, Stiller was again notified of deficiencies in his usage of antibiotics, and of his failure to order follow-up X-rays. By letter of September 12, 1985, Calvin and Mannion notified Stiller of specific problems that required immediate correction, which problems were further clarified by a letter dated October 21, 1985. Corrective action was

initiated on November 13, 1985, when Mannion advised Stiller that the Department of Surgery would convene a special meeting on the 18th in order for Stiller to defend his treatment of five specific cases. On November 15, 1985, Calvin related to Stiller that the basis for corrective action included such areas as "the use of antibiotics, use of standing orders, management of [five specific cases], quality and timeliness of clinical records, availability for patient care, and meeting attendance." Plaintiff's Exhibit DD, Hearing Exhibit 63.

By letter of November 19, 1985, Dr. Zahrt informed Stiller that the Executive Committee voted to suspend Stiller's privileges and that the Board approved the Committee's determination. Attached to that letter were the minutes from the Surgery Department meeting indicating general areas of concern as well as specific problems associated with Stiller's treatment of five patients. Also attached was a letter from Mannion to Calvin, again reciting specific instances of deficient performance.

Following Stiller's request for an evidentiary hearing, the Hospital set an initial hearing date of December 5, 1985. After a delay in which Stiller changed attorneys and the parties agreed to a continuance, the Hospital notified Stiller by letter dated January 31, 1986 of the new hearing date of February 15, 1986. After listing the witnesses expected to testify on behalf of the hospital, the letter stated in part:

Each of these physicians will present evidence about your failure to conform to the standards of care and skill prevailing among reasonably competent orthopedic surgeons as well as your refusal to comply with hospitals [sic] rules and regulations.

The deviations include: inappropriate or excessive use of antibiotics and other medications which evince a lack of knowledge of basic pharmacology; failure to prepare on a reasonably prompt basis full, complete, and accurate hospital charts reflecting the history and physical examination performed, the surgical procedures undertaken, the day to day progress of the patient, and the condition and prognosis of the patient upon discharge; inattention to certain patients; management of patients with medical problems for which consultation should have been requested; and failure to make changes in your methods of practice when deviations have been pointed out to you.

The medical records and other documents upon which the hospital will rely at the time of the hearing will be available for inspection at 1:00 P.M. on Wednesday, February 5, 1986, in the executive offices of the hospital.

Stiller did in fact appear at the Hospital on February 5, 1986, where he was presented with the charts selected for use in the evidentiary hearing. Moreover, Stiller met with Dr. Zahrt on February 8, 1986, to review the medical charts that formed the basis of Zahrt's testimony. On review before the trial court, Zahrt described the meeting as follows:

Q Tell us what happened at that meeting.

A At the meeting we had arranged all of the charts that I had audited and I had already made notes of the findings of my audit. We had arranged the charts around the boardroom table and I offered to discuss any and all of the charts with him.

Q With Dr. Stiller?

A Yes.

Q Did you discuss any charts with Dr. Stiller?

A Yes, he asked a few and he made a few notes and uh, said something that this information, *he had all this information in the office already in his copies* and uh, we were there about 35 minutes.

Record, p. 814 (emphasis added). Zahrt was available to discuss the charts with Stiller for the entire afternoon.

A few days later, Stiller and his attorney were to visit Dr. Robert Colyer for a few hours to examine the medical charts upon which Colyer would base his testimony. Instead, Stiller phoned Colyer and spent just over one-half hour reviewing the information.

Stiller also contends that Exhibit 61, a list of medical charts, was the exclusive list of matters to be testified to at the hearing, and that reliance on any other medical chart deprived him of notice required by the bylaws. The Hospital counters with the assertion that Exhibit 61 was merely a list prepared to enable the witnesses to summarize their findings for the hearing panel, and was not an exclusive list of all the medical charts to be relied upon at the hearing. The Hospital reasserted its position that Stiller was provided with all charts used at the hearing. There is no indication that Exhibit 61 was ever meant to be an exclusive list, save Stiller's lone assertion in this regard.

Stiller misstates the evidence when he asserts that the affidavit of Dr. Alexander Stemer encompassed a review of fifty-eight charts (a portion of which were also referenced by Exhibit 61). Actually, Stemer stated he was asked to review fifty-eight cases, but the affidavit relates his findings in only nineteen cases.

Because of Stiller's efforts to avoid a hearing through his attempts to resolve the matter diplomatically, it was not certain that the hearing would be held until Stiller was so advised on January 31, 1986. Considering that the records were first made available to Stiller less than one week later, and that Stiller did not make the most of his opportunities to interview the witnesses for the Hospital, he cannot now be heard to complain that notice of the subject matter of the hearing was insufficient. The Hospital substantially complied with its bylaws pertaining to notice. *See El–Issa, supra,* at 1381.

## II.

■ Stiller next asks this court to find that the Hospital's determination was arbitrary and capricious and unsupported by substantial evidence. Our supreme court recently decided that, absent proof sufficient to demonstrate the presence of state action, a physician is not entitled to judicial review of a private hospital's decision under an arbitrary and capricious standard. *Pepple v. Parkview Memorial Hosp., Inc.* (1989), Ind., 536 N.E.2d 274. In the case before us, no state action is implicated; therefore, we will not review Stiller's appeal under the broader arbitrary and capricious standard.[1] However, pursuant to the terms of the Fair Hearing Plan adopted by Hospital Bylaw 9.2–1, the Governing Board may affirm the report and recommendation of the Executive Committee if "the findings, conclusions, and report and recommendation of the Executive Committee are supported by substantial and reliable evidence[.]" FHP 5(a). We will address Stiller's sufficiency claim.

■ When determining the sufficiency of the evidence, this court will not reweigh evidence or judge the credibility of witnesses. Rather, we look to the evidence most favorable to the appellee together with all logical inferences flowing therefrom. Only where there is a total failure of evidence or where the judgment is contrary to uncontradicted evidence will it be reversed. *Kiracofe, supra,* at 1140; *El–Issa, supra,* at 1377–78.

At the trial court level, Stiller submitted excerpts from the deposition testimony of four witnesses and a page from an edition of the Physician's Desk Reference. The trial court sustained the Hospital's objection to the exhibits as outside the scope of judicial review, but allowed Stiller to make an "offer to prove" on each exhibit. Stiller now bolsters his argument on appeal with these same exhibits in an attempt to con-

1. The trial court indicated the terms of the Fair Hearing Plan, section 3.3–4(e), allows the reviewing court to apply the arbitrary and capricious standard. However, that section relates to the presentation of the evidence at the hearing before the Executive Committee. FHP 3.3–4(e) states in part:

"It is the responsibility of the Credentials Committee to present appropriate evidence in support of the decision, and the petitioner shall thereafter have the responsibility of supporting his challenge to the decision by an appropriate showing that the decision lacks any factual basis or that it is arbitrary, unreasonable or capricious."

This standard pertains to the petitioner's burden of challenging the case against him before the Executive Committee, and does not establish our standard of review of the Board's final decision, from which Stiller now appeals.

tradict the findings from the peer review proceeding. This is merely a request to reweigh evidence. As stated above, we will only look to the evidence most favorable to the appellee.

◼ Stiller also suggests that we disregard as "surplusage" portions of testimony elicited at the hearing, citing *Perez v. United States Steel Corp.* (1981), Ind., 426 N.E.2d 29. In *Perez,* our supreme court held that "statements to the effect that 'the evidence revealed such and such ...,' that 'Mr. Jones testified so and so ...,' or that 'the Industrial Board finds Dr. Smith testified so and so ...,' " do not sufficiently satisfy the Worker's Compensation Act requirement of specific findings of fact. *Id.* at 33. Emphasizing the importance of specific findings, the *Perez* court noted that parties have a legal right to know the evidentiary bases upon which the ultimate finding rests, and that the statutory requirement serves to protect against careless or arbitrary administrative action. *Id.* at 32.

The Hospital correctly notes that the *Perez* court clarified the substantive purposes of the fact-finding requirement in the context of the Worker's Compensation Act, IC 22–3–4–7. The Worker's Compensation Act is not applicable to this case. The Hospital fact-finding process is governed by the bylaws and the Fair Hearing Plan incorporated therein. FHP 3.4 requires the Executive Committee to "make its written findings, conclusions and a report and recommendation based thereon to the Governing Board...." The Hospital's written findings were in substantial compliance with the bylaws. The *Perez* case is inapposite.

◼ A review of the evidence favorable to the Hospital supports the Executive Committee's recommendation. The Committee found that Dr. Stiller's recordkeeping was incomplete, sketchy, and inaccurate. Testimony from Dr. Colyer and Dr. Zahrt indicated that Stiller's records were typically non-existent or extremely brief. This finding was also supported by the affidavit of Dr. William Hejna. The findings relating to Stiller's inappropriate usage of antibiotics were supported by Hejna's affidavit, Colyer's testimony, and Colyer's report entered into evidence at the hearing.

Committee findings pertaining to Stiller's poor medical and clinical judgment and neglect of significant medical conditions are supported by the evidence as well. Colyer testified that Stiller failed to diagnose a displaced cervical condition that could have resulted in "tragic consequences" for the patient. Another case involved Stiller's implantation of an artificial knee joint in a diabetic patient only one week after the patient had been released from the hospital with intestinal bleeding. When asked if it would not have been wise to wait thirty or sixty days to operate, Stiller replied: "It might have been. You know, it might be a valid criticism, you know. We were worried about it at the time. I just felt she was healed from the [bleeding], but I think your criticism is possibly well-founded." Defendant's Exhibit CC, p. 363.

Stiller's remaining allegations with respect to his sufficiency claim merely invite this court to consider favorable evidence not submitted at the hearing, and to disregard evidence of record unfavorable to him. By any other name, this is an invitation to reweigh evidence and judge witness credibility, functions reserved for the Executive Committee. The findings and conclusions of the Committee are supported by substantial and reliable evidence, in accordance with Hospital bylaws.

### III.

◼ Stiller next contends that the Hospital failed to comply with bylaw procedural requirements in several respects, resulting in a denial of his due process rights. We remind Stiller that due process rights are predicated upon some form of state action, absent in proceedings such as this involving private hospitals. *Friedman, supra,* at 253. Our sole function on review is to determine whether the Hospital has substantially complied with its bylaws. *Id.; Kiracofe, supra,* at 1139.

Stiller maintains that the Hospital violated its bylaws when it suspended his staff membership on November 19, 1985, and subsequently denied his request for reinstatement without a hearing. We refer Stiller to section 8.1-4 of the bylaws, which allows the Executive Committee to take any action, *without limitation*, upon a department or ad hoc committee report. As the trial court correctly concluded, bylaw 8.1-5 permits the Board to take "appropriate action" on the Committee's recommendation, subject to the petitioner's procedural rights afforded by the Fair Hearing Plan. Stiller received a hearing prior to the final Board decision to revoke his staff membership, and there is no bylaw provision requiring his reinstatement prior to the hearing. The record evinces substantial Hospital compliance with its bylaws.

Stiller also claims Leigh Morris, president of the Hospital and one of the Board members hearing his case, illegally declared his intention to revoke Stiller's staff membership even if Stiller was found not to be impaired. The trial court determined that there was not sufficient evidence that the Board or any of its members were biased or lacked impartiality in rendering the final decision. The sole evidence of Morris' alleged prejudice is the affidavit of Stiller's counsel, which affidavit was not submitted as evidence at trial. We agree with the trial court that Stiller failed to support this allegation with sufficient evidence. We also observe that allegations of bias and prejudice are due process arguments, unavailable to Stiller in an action against a private hospital. *Friedman, supra,* at 253. Stiller has demonstrated no bylaw violation with this assertion.

Stiller argues that the subject matter of the hearing should have been confined to what he believes was the principal issue encompassed in the Committee recommendation, *i.e.*, his purported "impairment." This argument is without merit. Without unduly burdening this opinion with a repetition of those instances where Stiller was made aware of specific areas of concern, *supra*, we reiterate that Stiller was apprised of the matters to be addressed at the hearing. Although the Committee recommendation included a request for assistance from the Indiana State Medical Association's Impaired Physician Program, his suspension was in no way based on a finding that he was an impaired physician.

Next, Stiller contends that the presence of four Board members at the Committee fact-finding meeting violated his due process rights, citing *City of Mishawaka v. Stewart* (1974), 261 Ind. 670, 310 N.E.2d 65. However, this argument again assumes the existence of due process rights, an assumption we have already determined is not valid in this case. Even if this court was to conclude that due process rights were at issue, reversal would not be warranted because Stiller has not introduced any evidence of actual bias or prejudice. As the court recognized in *Kiracofe, supra,* a physician must demonstrate actual bias in order to disqualify an administrative tribunal. 461 N.E.2d at 1141. Stiller has not demonstrated actual prejudice, nor has he demonstrated a violation of a Hospital bylaw with this allegation.

Stiller also takes issue with the practice of allowing the attorney prosecuting the charges against Stiller to act as counsel to the Committee during the fact-finding process. Again, Stiller does not articulate, and this court cannot identify, the particular bylaw that has allegedly been violated. Stiller again raises the specter of due process, citing *City of Mishawaka, supra.* Even if this case applied, it would be of no aid to Stiller. In *City of Mishawaka,* our supreme court held that an attorney cannot fill the dual roles of prosecutor and review board *member* in an action to review the dismissal of a tenured fireman. *Id.* at 678, 310 N.E.2d at 69. Stiller presented no evidence that counsel for the Hospital was a member of the Executive Committee, or that he was at the Committee meeting in anything other than an advisory capacity. There has been no violation of Hospital bylaws in this instance.

### IV.

■ Stiller argues that the Hospital decisions of November 19, 1985 and April 23, 1986 were illegal determinations made in contravention of the Hospital's bylaws. First, Stiller argues that the Board's approval of the Committee decision of November 19, 1985 to suspend his staff privileges was a final action taken without affording him bylaw mandated notice and hearing. The Hospital counters with the assertion that the Committee suspension was proper, and that it triggered the notice and hearing bylaw provisions that Stiller did in fact receive. We agree with the Hospital.

Section 2.1 of the Fair Hearing Plan adopted by the bylaws provides in part:

The following decisions shall entitle the petitioner to an evidentiary hearing before the Executive Committee, with the right of appeal on the record to the Governing Board of the Hospital, whose decision shall be final:

\* \* \* \* \* \*

(h) Suspension for a term of 32 days or more.

This section was referenced in the letter to Stiller informing him of the suspension. The same letter advised Stiller of his right to a hearing in the matter. The fact that Stiller did request such a hearing indicates his understanding that the decision was not final. Clearly, by virtue of FHP 2.1, the Board action approving the suspension was not a final decision, but one which triggered Stiller's bylaw rights to notice and a hearing. The cases cited by Stiller that pertain to police officers' due process rights in disciplinary proceedings have no bearing on this appeal.

Stiller maintains that the April 23, 1986 action by the Board was an illegal "self-review" of the "final" determination of November 19, 1985. However, we have already determined that the November 19, 1985 determination was not a final decision; therefore, the April 23, 1986 decision was not a "self-review" but a bylaw mandated procedure for finalizing the corrective action. The trial court did not err in so finding.

### V.

■ For his final allegation of error, Stiller contends that the trial court impermissibly conducted a trial *de novo* by considering evidence from the hearing record not reduced to findings by the Hospital as support for the recommendation. Specifically, Stiller alleges that the trial court based conclusions 29 through 33 on facts never found by the Hospital. Conclusion 29 reads in part:

In this case, the Court need only determine whether the Board correctly concluded that the Executive Committee recommendation was based on "substantial and reliable evidence", in accordance with FHP Article V.

Stiller argues the court improperly usurped the Board's function and illegally recast findings and conclusions. The Hospital contends the trial court merely exercised its power of judicial review over a private hospital's peer review determination. The Hospital is correct. As stated by our appellate court in *Kiracofe, supra,* we are empowered to consider the evidence favorable to the appellee, together with the logical inferences arising therefrom. 461 N.E.2d at 1140.

■ A trial *de novo* is a proceeding where a reviewing court decides facts anew, reweighs evidence, or substitutes its judgment for that of the fact-finder in the administrative proceeding. *Kelsey v. Bowen* (N.D.Ind.1988), 681 F.Supp. 595. A typical example of this infringement upon the discretion of the administrative body is when the reviewing court hears evidence and testimony apart from the record of the administrative hearing. *Indiana State Highway Comm. v. Zehner* (1977), 174 Ind. App. 176, 366 N.E.2d 697.

Stiller does not contend that the trial court decided facts anew, or reweighed evidence, or substituted its judgment for that of the Committee or Board. The only new evidence submitted to the trial court was tendered by Stiller himself. His "offers of proof," purportedly submitted for definitional purposes, are relied upon by him in

this appeal to rebut the factual findings from the administrative proceeding below. As Stiller acknowledges, it is not appropriate for a reviewing court to consider such evidence. The trial court did not conduct a *de novo* proceeding.

The determination of the trial court is in all things affirmed.

HOFFMAN and SHIELDS, JJ., concur.