Ibrahim KESKIN, Appellant–Plaintiff,

v.

MUNSTER MEDICAL RESEARCH
FOUNDATION, et al., Appellees–
Defendants.

No. 37A05–9105–CV–141.[1]

Court of Appeals of Indiana,
First District.

Oct. 31, 1991.

Joseph S. Reid, Hand, Muenich, Wilk & Reid, Highland, for appellant-plaintiff.

Robert F. Peters, Lucas, Holcomb & Medrea, Merrillville, for Munster Medical Research Foundation.

Norman G. Tabler, Jr., Scott M. Kosnoff, Baker & Daniels, Indianapolis, Kirk A. Pinkerton, Pinkerton & Friedman, P.C., Highland, for Associated Anesthesiologists of Hammond.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Ibrahim Keskin ("Keskin") appeals from a summary judgment entered for Munster Medical Research Foundation ("Hospital") and Associated Anesthesiologists of Hammond ("Associated") in an action for injunctive relief precluding enforcement of an exclusive contract ("Contract") for anesthe-

2. IND.CODE § 34–4–12.6–1 et seq.

3. Keskin's claim against Associated was expressly abandoned and thus, we may summarily affirm the trial court's grant of summary judg-

siological services between Hospital and Associated, and damages for barring Keskin from practicing at Hospital based on the Contract. We affirm.

## ISSUES

We restate the issues on appeal as:

1. Is Keskin's claim outside of the purview of the Indiana Peer Review Statute? [2]

2. Was Keskin's purported release of Hospital from liability ineffective?

3. Did Keskin fail to exhaust his administrative remedies as provided in Hospital's by-laws?

4. As a private, not-for-profit organization, is judicial review of Hospital's action limited to whether Hospital substantially complied with its own by-laws?

5. Was summary judgment properly granted in favor of Hospital? [3]

## FACTS

Keskin is a licensed physician who holds a specialty in anesthesiology. Hospital is a private, not-for-profit organization that operates in Munster, Indiana. Hospital receives no direct federal or state funds; it does, however, participate in the medicare and medicaid reimbursement programs.

In March of 1975, Hospital placed limitations on the number of anesthesiologists allowed to practice at Hospital, and was negotiating a contract with Associated, a group of physicians that was active in the practice of anesthesiology at Hospital at that time. On June 6, 1975, Hospital entered into the Contract with Associated, purporting to give Associated exclusive rights and control over Hospital's anesthesiology department. The Contract was entitled "Open Staff Agreement," and provided in pertinent part:

"IV. OPEN STAFF CONCEPT.

A. Additional anesthesiologists may become members of the Medical Staff of The Community Hospital and may be-

ment in Associated's favor. *See Pennsylvania Railroad Company v. Patesel* (1948), 118 Ind. App. 233, 237, 76 N.E.2d 595, 596–597.

come members of the Department of Anesthesiology. The Board of Directors shall determine the size of the Department in that some limitation may be made on the number of Anesthesiologists practicing within the Department."

Record at 394.

From 1976 until 1986 when this lawsuit was instigated, Keskin was a member of Hospital's staff for all but two years. Beginning in 1980, Keskin sought to practice anesthesiology actively at Hospital. His requests were denied. Hospital told Keskin that it had an exclusive contract with Associated, stating that Associated would provide all of Hospital's necessary anesthesiological services. Unless Keskin became a member of Associated, he would be unable to practice anesthesiology at Hospital. During his tenure on Hospital's staff, Keskin never actually practiced anesthesiology at Hospital and did not admit any patients.

On July 10, 1985, Keskin wrote to Hospital, seeking to practice independently at Hospital on a case-by-case basis. He stated that he had been on Hospital's staff for many years, and also that he was aware of the Contract between Hospital and Associated. He also wrote that he had contacted Associated, but had been informed that it had no openings for additional anesthesiologists. Hospital's administrator, Edward Robinson, responded by letter on July 15, 1985, reiterating Hospital's exclusive contractual arrangement with Associated for required anesthesiological services, and thus denying Keskin's request. Keskin took no further action regarding the performance of anesthesiological services at Hospital for the 1985–1986 fiscal year.

Hospital's executive committee of the board of directors met in December of 1985 to reconsider the Contract. The meeting's minutes reflect that the committee concluded that "additional problems would arise and patient care would suffer by allowing individual doctors to practice upon the call of particular surgeons and physicians." Record at 66. A motion was passed limiting Hospital's anesthesiology department to those anesthesiologists currently practicing or working with Associated.

Keskin reapplied in 1986 for the 1986–1987 fiscal year. On May 9, 1986, Hospital's Credentials Committee wrote to Keskin in response to his reapplication, requesting documentation and confirmation that there had been no changes in his privileges at other hospitals. Keskin responded by letter on May 27, 1986, admitting that he had resigned his privileges at St. Catherine Hospital in East Chicago, Indiana ("St. Catherine"), that he had been suspended previously from St. Catherine, and that he had resigned his privileges at Graham Hospital in Canton, Illinois. The record does not indicate any further action taken regarding this application. After Keskin submitted this reapplication, but before Hospital had taken final action thereon, this action was filed.

In his complaint filed June 27, 1986, Keskin alleged that: 1) Hospital's denial of Keskin's application for privileges was improper and thus, an injunction prohibiting the denial of the privileges was warranted; and, 2) Hospital's arrangement with Associated constituted an unlawful restraint of trade, thereby requiring an injunction, as well as treble damages from Hospital and Associated. On December 11, 1990, the trial court entered summary judgment in favor of Hospital and Associated.

On January 8, 1991, Keskin filed a motion to correct errors, in which he expressly preserved error regarding Hospital, but not regarding Associated or its physicians. Keskin's motion to correct errors was denied on January 29, 1991. Further, in his appellant's brief, Keskin specifically restricted his claims on appeal to those against Hospital.

Other relevant facts will be stated in our discussion of the issues.

## DISCUSSION

*Issue One*

■ Keskin asserts that his claim falls outside of the purview of the Indiana Peer Review Statute. We agree.

In its order granting summary judgment, the trial court relied on Indiana's Peer Review Statute in determining that Keskin's

claims against Hospital were barred because Hospital's committee's decisions were immune from suit. Our reading of the Indiana Peer Review Statute shows that this reliance was misplaced.

The pertinent portions of the statute read:

"34-4-12.6-1 Definitions....

(b) As used in this chapter, 'evaluation of patient care' relates to:

(1) the accuracy of diagnosis;

(2) the propriety, appropriateness, quality or necessity of care rendered by a professional health care provider; and

(3) the reasonableness of the utilization of services, procedures, and facilities in the treatment of individual patients.

As used in this chapter, the term does not relate to charges for services or to methods used in arriving at diagnoses.

(c) As used in this chapter, 'peer review committee' means a committee having the responsibility of evaluation of qualifications of professional health care providers, or of patient care rendered by professional health care providers, or of the merits of a complaint against a professional health care provider that includes a determination or recommendation concerning the complaint. The committee must meet the following criteria....

34-4-12.6-3 Immunity

(a) There shall be no liability on the part of, and no action of any nature shall arise against, the personnel of a peer review committee for any act, statement made in the confines of the committee, or proceeding thereof made in good faith in regard to evaluation of patient care as that term is defined and limited in section 1(b) of this chapter."

We find Keskin's reading of these sections is correct. Subsection (b) refers to care rendered to individual patients. Keskin has never actively practiced medicine at Hospital, although he was a member of the staff for many years, thus this subsection cannot apply to his behavior at Hospital. Similarly, subsection (c) is inapplicable. It refers to evaluations of professional health care providers' care and treatment of individual patients. Keskin never provided health care at Hospital and thus, no complaints regarding his services rendered to patients at Hospital were ever lodged.

While a portion of I.C. § 34-4-12.6-1(c) does mention evaluation of qualifications of professional health care providers, we find that clause inapplicable to Keskin's claim in view of the entire statutory scheme. *See In re Middlefork Watershed Conservancy District* (1987), Ind.App., 508 N.E.2d 574, 577 (statutes must be considered within the context of the entire act, and not in isolation.). Hospital's reasons for its exclusive arrangement with Associated did not relate to Keskin's qualifications to render medical care; rather, the Contract was ostensibly based on Hospital's desire for efficiency and the orderly functioning of its anesthesiology department. Moreover, I.C. § 34-4-12.6-3 supports our determination. The immunity provision protects "evaluation of patient care," not contractual arrangements by a hospital's board of directors. Thus, we find that Indiana's Peer Review Statute does not apply to Keskin's claims.[4]

*Issue Two*

■ Keskin next asserts that any purported release of Hospital from liability was ineffective. We find that no release occurred.

Hospital contends that Keskin released it from liability through clauses in the by-laws and the applications Keskin signed in seeking to practice actively at Hospital. Article XIV of the by-laws, on which Hospital relies, refers to civil immunity regarding communications relating to a physician's quality of patient care.[5] As dis-

---

4. Hospital argues that Keskin's prayer for injunctive relief was inappropriate since Indiana's Peer Review Statute prohibits injunctive relief. Because we have determined that this statute does not apply, we need not address these contentions.

5. Article XIV provides in pertinent part:

cussed in Issue One, Keskin did not render medical care to any patients at Hospital, making this article inapplicable to his claim.

▮ Also, the applications Keskin submitted do contain releases; however, these releases cover persons furnishing information regarding Keskin, not Hospital's purported abuse of its own by-laws, which is the basis of Keskin's claim. Releases must be construed to carry out the parties' intent. *Wecker v. Kilmer* (1973), 260 Ind. 198, 203, 294 N.E.2d 132, 135. The release's language is plain and refers only to those persons providing information regarding Keskin's qualifications for appointment to Hospital's staff. This clause does not immunize Hospital from attacks on adherence to its by-laws. Thus, the release does not bar Keskin's claims.

*Issue Three*

▮ Hospital defends by asserting that Keskin failed to exhaust his administrative remedies as provided in Hospital's by-laws. We find that the by-laws do not apply to Keskin's applications, and thus hold that the administrative avenues provided therein do not bar Keskin's claims since he was not required to pursue them.[6]

▮ Interpreting the Hospital's by-laws is analogous to interpreting a statute, so normal rules of statutory construction apply. Therefore, we view the by-laws in question, Articles VII and VIII, in conjunction with the entire set of by-laws to ascertain the context of the by-laws. *See Middlefork Watershed Conservancy District,* 508 N.E.2d at 577. Moreover, where several sections of a document pertain to the same subject matter, they are to be interpreted in *pari materia* and construed together. *See Quality Clothes Shop v. Keeney* (1914), 57 Ind.App. 500, 504, 106 N.E. 541, 543. Thus, we agree with Keskin that

Articles VII and VIII must be read together to ascertain their full meaning.

These articles provide, in pertinent part:
"VII. CORRECTIVE ACTION
Section 1. Procedure
a. Whenever the activities or professional conduct of any practitioner with clinical privileges are considered to be lower than the standards or aims of the medical staff or to be disruptive to the operations of the hospital, corrective action against such practitioner may be requested by any officer of the medical staff, by the chairman of any clinical department, by the executive officer, or by the governing body. All requests for corrective action shall be in writing, shall be made to the executive committee, and shall be supported by reference to the specific activities or conduct which constitutes the grounds for the request....
VIII. HEARING AND APPELLATE REVIEW PROCEDURES
Section 1. Right to Hearing and to Appellate Review
a. When any practitioner receives notice of a recommendation of the executive committee that, if ratified by decision of the governing body, will adversely affect his status as a member of the medical staff or his exercise of clinical privileges, he shall be entitled to a hearing before a committee appointed by the president of the medical staff. If the recommendation of the executive committee following such hearing is still adverse to the affected practitioner, he shall then be entitled to an appellate review by the governing body before the governing body making a final decision on the matter...."

Record at 426, 428. When construing Articles VII and VIII together, we find that Article VII defines the procedures to be followed when complaints against individual medical practitioners are filed. Article VIII, meanwhile, delineates the procedural

---

"Third, that there shall, to the fullest extent permitted by law, be absolute immunity from civil liability arising from any such act, communication, report, recommendation, or disclosure, even where the information involved would otherwise be deemed privilege."
Record at 513.

6. Keskin presents additional argument regarding the applicability of exceptions to the doctrine of exhaustion of administrative remedies. Because we decide that the administrative remedies provided do not apply to Keskin, we need not address these contentions.

rights available if an executive committee recommends to reduce, suspend, or revoke a practitioner's privileges under Article VII, section 1, subsection e. The application of Article VIII is restricted to those circumstances when favorable or unfavorable recommendations regarding a practitioner are made by the executive committee.

We agree with Keskin's interpretation of these by-laws, which together form an orderly procedure to be used when complaints are filed against practitioners. As discussed earlier, however, Keskin's medical work at Hospital never prompted complaints because he never actually admitted patients and practiced anesthesiology at Hospital; no recommendation of the executive committee regarding his work at the hospital could issue. Thus, Keskin's claim is not barred by a failure to follow administrative remedies that are inapplicable to him.

Hospital's reliance on *Yarnell v. Sisters of St. Francis Health Services* (1983), Ind. App., 446 N.E.2d 359, *trans. denied,* is misplaced. This case amply supports Keskin's argument on this issue. We held in *Yarnell* that to challenge successfully a hospital's decision not to reappoint a staff member on the basis of the hospital's failure to follow the procedure set out in its bylaws, the staff member should exhaust his administrative remedies prior to bringing an action at law or in equity. *Id.* at 363. We have already determined that the administrative procedures outlined in Hospital's by-laws do not apply to Keskin's claims; further, *Yarnell* is clearly distinguishable on its facts.

In *Yarnell,* the hospital's review board had set a hearing date to review the practitioner's claim and prior to that date, the practitioner filed suit. *Id.* at 361. Thus, a review procedure was applicable to the practitioner's claim and, indeed, the hospital was processing his claim according to its by-laws. Unlike the practitioner in *Yarnell,* Keskin's claim was not pending before a board, and a hearing date to consider Keskin's reappointment had not been set. Hospital and Keskin were still exchanging correspondence regarding the application when this suit was filed, but no hearing process was underway nor was one required. Therefore, Keskin's claim is not barred because of a failure to exhaust administrative remedies; the administrative review provisions in the by-laws pertain to individual complaints, not board decisions regarding reappointment.

*Issue Four*

Keskin argues that he was not afforded all of the procedural safeguards as provided in Hospital's by-laws, and therefore, Hospital violated its own by-laws. We disagree, and hold that our review is restricted to whether Hospital substantially complied with its by-laws and that Hospital did comply with the applicable by-laws.

 We may not review a private hospital's decision to limit a physician's surgical privileges under an arbitrary and capricious standard. *Pepple v. Parkview Memorial Hospital, Inc.* (1989), Ind., 536 N.E.2d 274, 276. Rather, once we find that the hospital in question is private, our inquiry is restricted to whether it substantially complied with its applicable by-laws. *Friedman v. Memorial Hospital of South Bend, Inc.* (1988), Ind.App., 523 N.E.2d 252, 253. Contrary to Keskin's assertion, the staff by-laws do not always constitute a contract between Hospital and its staff; rather, we have held that the by-laws can constitute a contract between Hospital and its staff. *Terre Haute Regional Hospital, Inc. v. El–Issa* (1984), Ind.App., 470 N.E.2d 1371, 1376–1377, *trans. denied.* In any case, Hospital substantially complied with its by-laws in Keskin's case.

 We first address Keskin's claim that Hospital is a public entity. His challenge to Hospital's status as a private institution is meritless. *See Kiracofe v. Reid Memorial Hospital* (1984), Ind.App., 461 N.E.2d 1134, 1138 (hospital was not a public institution, no nexus was established to support a suit based on state action, and where such a hospital follows the procedures listed in its by-laws, the hospital board's deci-

sions are not subject to judicial review).[7] We find that the factors the concurrence in *Kiracofe* found determinative in that decision finding no state action warrant a similar finding here.[8] Unlike the hospital in *Kiracofe,* Hospital receives no public funds, does not hold a monopoly on health care in the pertinent geographical area, and a denial of staff privileges would not seriously interfere with Keskin's right to practice his profession in the particular area. Indeed, Keskin practiced at another health care facility during the period in which he attempted to practice actively at Hospital and also was employed at the time his deposition in this cause was taken. It is true that Hospital participates in Medicare and Medicaid programs; this minimal involvement alone, however, does not bring Hospital's actions within the ambit of state action.

Furthermore, Keskin's reliance on *Stiller v. LaPorte Hospital, Inc.* (1991), Ind. App., 570 N.E.2d 99, is misplaced. *Stiller* involved a physician seeking reinstatement of staff privileges. *Stiller* held that decisions of private hospitals concerning staff privileges are accorded great deference, and our only inquiry on review is whether the hospital complied with the procedures set out in its by-laws. *Id.* at 102. As discussed above, such a limited scope of judicial review forecloses our strict scrutiny of Hospital's procedures and their attendant fairness; instead, our review reveals substantial compliance with Hospital's by-laws, as the court found in *Stiller.* *Id.* at 109. *Stiller* additionally provides that a hospital need not provide procedures commensurate with constitutional rights to due process; substantial compliance with its by-laws is all that is required. Thus, Keskin cannot prevail on this claim, and *Stiller* only serves to buttress our conclusion on this issue.

▮▮▮▮▮▮ Keskin's next arguments on this issue range from claims of procedural

impropriety to those alleging that Hospital could not enter into an exclusive agreement with Associated based on its by-laws. We find both of these contentions unpersuasive. Our finding that Hospital is a private institution requires that we review Hospital's actions under a substantial compliance standard. Our study of the applicable by-laws does not reveal any provisions which would prevent Hospital from entering into the disputed contract with Associated, and the procedural deficiency argument which Keskin asserts is likewise without merit. *See Issue Three.* While we find no specific authority within the by-laws supporting Hospital's assertion that it is expressly authorized to enter into exclusive contracts, or rather, the "Open Staff Agreement" at issue here, we find the language of Article III to be persuasive. This article provides, in pertinent part:

"Section 2. Powers of the Board of Directors

The powers of the Corporation shall be vested in the Board of Directors who shall have charge, control, and management of the property, affairs, and funds of the Corporation and who shall approve all committee appointments. The Board of Directors shall have the power and authority to do and perform all acts and functions not inconsistent with these By-Laws....

The Board of Directors shall hire all physicians or dentists in medico-administrative positions, upon recommendation of the Administrator. The Board may contract with physicians or dentists to furnish medico-administrative services upon such terms as may be agreed upon. The termination by the Board of Physicians furnishing medico-administrative services by contract shall be controlled by the contract and governed by law. Such termination shall be governed by the appropriate procedure applicable to the revoca-

7. Even given the concerns expressed in the concurrence in *Kiracofe,* 461 N.E.2d at 1141–1144, Hospital has shown substantial compliance with its by-laws; our restricted standard of review forecloses comment on the reasonableness of those by-laws and the procedures they provide.

8. We note that Keskin mischaracterizes the opinion in *Kiracofe* to which he cites as dissenting; rather, the opinion was concurring in the majority's result and provided more detailed explanation of the majority's reasoning as well as a suggestion for future analyses in this area.

tion of staff privileges as controlled by the Constitution and By–Laws of the Medical Staff. All licensed practitioners appointed to medico-administrative positions must be members of the medical staff...."

Record at 74. We find that this section gives Hospital the authority to enter into the type of contract which it has with Associated, albeit implicitly. Further, the "appropriate procedure" mentioned in this section refers to termination of physicians actively practicing at Hospital. Even if we were to classify Keskin as an actively practicing physician, which he is not, the action taken regarding him was in the context of an application for extended privileges, not the termination of existing privileges. Thus, the sections on which Keskin relies in asserting a specific appellate procedure was required are inapplicable to his situation.

█ Our conclusion is additionally supported by IND.CODE § 16–10–1–6.5, which governs licensing of hospitals. The relevant portions provide:

"Governing board; disciplinary actions; reports; medical staff

Sec. 6.5 (a) The governing board of the hospital shall be the supreme authority in the hospital, responsible for:

(1) the management, operation, functioning, and control of the hospital;

(2) the appointment and reappointment of the members of the medical staff, and the assignment of privileges to members of the medical staff, with the advice and recommendations of the medical staff, consistent with their individual training, experience, and other qualifications;

(3) establishing requirements for initial and subsequent appointments to and continued service on the hospital's medical staff, consistent with the appointee's individual training, experience, and other qualifications, including such requirements as:

(A) the submission of proof that a medical staff member has qualified as a health care provider under IC 16–9.5;

(B) the performance of patient care and related duties in a manner that is not disruptive to the delivery of quality medical care in the hospital setting; and

(C) standards of quality medical care which recognize the efficient and effective utilization of hospital resources, as developed by the medical staff...."

This statute gives Hospital's board of directors the power and authority to control Hospital's staff and arrangements with Associated. While we cannot say that Hospital was expressly authorized to enter into the "exclusive" contract in dispute, under our deferential standard of review, we cannot say that Hospital exceeded its authority under its by-laws and the applicable statute.

Keskin also makes much of Article V in Hospital's by-laws, which provides guidelines for the appointment and reappointment process. The relevant provision states:

"Section 3. Reappointment Process

a. At least forty-five (45) days prior to the final scheduled governing body meeting in the medical staff year, the credentials committee shall review all pertinent information available on each practitioner scheduled for periodic appraisal, for the purpose of determining its recommendations for reappointments to the medical staff and for granting of clinical privileges to the executive committee. Where non-appointment or a change in clinical privileges is recommended, the reason for such recommendation shall be stated and documented."

Record at 415. Here, even if Keskin is classified as a practitioner scheduled for periodic appraisal, which we find doubtful, no violation of this by-law would have occurred. The credentials committee never made a final recommendation because it had requested further information from Keskin, which he apparently never supplied. Thus, any appeals procedure that he asserts under Article V would have been premature.

Therefore, we find that Hospital substantially complied with its by-laws in denying Keskin's reapplication, and in entering its contractual relationship with Associated.

Although Keskin was technically part of Hospital's staff, Hospital was within its rights under its by-laws and the applicable statutes in determining that only Associated could perform anesthesiological services at Hospital, to promote the orderly and efficient performance of anesthesiological services for patients.[9]

As Keskin correctly states, hospital staff members are entitled to "each and every procedural right provided by the bylaws." *Pepple*, 536 N.E.2d at 276. However, we find that Hospital's by-laws do not provide the extensive appellate procedures Keskin asserts in his claim. Rather, Hospital substantially complied with all its required procedures.

*Issue Five*

Finally, Keskin argues that because of the alleged errors the trial court made in its findings of fact and conclusions of law, summary judgment was improperly granted in Hospital's favor. We disagree.

We note the trial court inappropriately entered findings with its summary judgment by which we are not bound. *Billingsley v. Brown* (1991), Ind.App., 569 N.E.2d 687, 688. On appeal, we use the same standard as the trial court in evaluating the propriety of summary judgment. *Jackson v. Warrum* (1989), Ind.App., 535 N.E.2d 1207, 1210. Summary judgment is appropriate only if no material issue of fact exists and the movant is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The movant bears the burden of proving the propriety of summary judgment, and all facts and inferences to be drawn therefrom are viewed favorably to the non-movant. *Jackson*, 535 N.E.2d at 1210. Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the record. *Wingett v. Teledyne Industries, Inc.* (1985), Ind., 479 N.E.2d 51, 54.

Because of our resolution of the other issues raised by this appeal, we find that the trial court properly entered summary judgment in Hospital's favor. Given our deferential standard of review and since Hospital substantial complied with its by-laws, summary judgment must be affirmed.

Affirmed.

ROBERTSON and BARTEAU, JJ., concur.

---

9. Hospital never promised Keskin, and he does not assert, that being admitted to Hospital's staff automatically entitled him to the privilege of performing anesthesiological services there. Indeed, for several years Keskin maintained his probationary status at Hospital while actively practicing at St. Catherine. Thus, staff membership does not carry with it the absolute right to practice medicine at a give health care facility.