Alan S. RAY, M.D., Gerald O. Daniel, M.D., and Warren E. Fischer, M.D., Appellants–Plaintiffs,

v.

ST. JOHN'S HEALTH CARE CORPORATION, d/b/a Saint John's Hickey Memorial Hospital, a/k/a Saint John's Medical Center, Appellees–Defendants.

No. 27A02–9008–CV–469.

Court of Appeals of Indiana, Second District.

Dec. 12, 1991.

Rehearing Denied Jan. 9, 1992.

Scott E. Shockley De Fur, Voran, Hanley, Radcliff and Reed, Muncie, for appellants-plaintiffs.

Norman G. Tabler, Jr. and Scott K. Kosnoff, Baker & Daniels, Indianapolis, for appellees-defendants.

William S. Hall and N. Kent Smith, Hall, Render, Killian, Heath & Lyman, Indianapolis, for amicus curiae Indiana Hosp. Ass'n.

SULLIVAN, Judge.

Plaintiffs Alan S. Ray (Ray), Gerald O. Daniel (Daniel), and Warren E. Fischer (Fischer), all Medical Doctors (Doctors), bring an interlocutory appeal challenging an order of the Grant Circuit Court denying their Motion to Compel discovery of documents and sustaining in substantial part defendant's Motion to Strike an affidavit and related exhibits submitted by Ray on grounds of the Indiana Peer Review Act (The Act).

We vacate and remand.

The Doctors are directors, officers and shareholders of Anderson Radiological Consultants (AnRad), an Indiana Corporation. AnRad had an exclusive contract to practice Radiology at St. John's Health Care Corporation (Hospital). Aside from being associated with AnRad, Doctors had been individually appointed for successive two year periods to the medical staff of Hospital pursuant to the hospital bylaws. On January 18, 1988, Plaintiff Ray was reappointed to the medical staff for a two year period, effective January 1, 1988. The next day, however, Hospital unilaterally terminated the AnRad contract, to be effective May 21, 1988.

Doctors continued to exercise their staff privileges pursuant to their individual appointments notwithstanding Hospital's action regarding AnRad. On March 10, 1988, Hospital's Board of Trustees adopted a Resolution stating Hospital policy to the effect that it could provide the highest quality patient care and make the most efficient use of its resources by entering into an exclusive services contract with radiologists who would constitute the professional staff of the Hospital's radiology department. The Resolution authorized Hospital's C.E.O., James H. Stephens (Stephens), to enter into such a contract and to modify existing contracts in his discretion in order to effectuate the policy.

On May 21, 1988, after the effective termination of the AnRad contract, plaintiff Ray was still attempting to exercise his staff privileges. On May 23, Stephens summarily suspended him pursuant to Section 6.2–1 of the bylaws. In his letter of explanation dated May 24, Stephens wrote that Ray's continued presence in the Hospital violated an exclusive contract that he had concluded with a new radiology group pursuant to the Board's March 10 Resolution. Stephens had, on the same date, advised the Hospital's Medical Executive Committee that the suspension was not a challenge to Ray's professional skill, competence or services. On June 22, Ray objected to the suspension in writing and demanded that the Medical Executive Committee hold a hearing to review the summary suspension, citing Section 6.2–2. The record does not show whether plaintiffs Daniel and Fischer attempted to exercise their hospital privileges after May 21; however, they did not request internal review.

In his May 24 letter, Stephens requested that the the Medical Executive Committee appoint an Ad Hoc Investigating Committee under Section 6.1–3(b) of the bylaws to determine whether a peer review action against Ray leading to possible corrective action was appropriate. Stephens asserted that Ray's summary suspension would remain in effect until the ad hoc committee issued its report. Ray objected to this procedure, claiming that his right to proceed under section 6.2 to reverse the summary suspension could not be held in abeyance until the conclusion of the open-ended, Hospital-initiated peer review proceedings un-

der section 6.1. Nevertheless, Ray's summary suspension was not lifted.

An ad hoc committee was formed and a report was issued over Ray's objection. The report recommended that a professional corrective action be initiated against Ray, and that his clinical privileges and medical staff membership be revoked. That report was reviewed by the Medical Executive Committee, pursuant to its authority under sections 6.2–2 and 6.2–3. The Medical Executive Committee recommended that the Board reject the ad hoc committee's report and terminate the summary suspension. The Board, through its own Executive Committee, rejected the recommendation of the Medical Executive Committee and recommended that Ray's clinical privileges and Medical Staff membership be revoked, citing section 7.2–1 of the bylaws. In support of its decision, the Board's Executive Committee cited the fact that Ray no longer had an exclusive contract with Hospital and that his continued presence at the Hospital would violate the March 10 Board Resolution.

Ray exercised his right to a hearing before an ad hoc panel to review the action of the Board's Executive Committee pursuant to section 7.1–1 of the bylaws. The hearing was held and the panel recommended that Ray's privileges and staff membership be terminated.

Plaintiffs filed suit in the Madison Superior Court. The case was transferred to the Grant Circuit Court. At the core of Doctors' theory is the assertion that Hospital's conclusion of an exclusive services contract with a radiological services corporation consisting of new doctors put Hospital in economic conflict with plaintiffs. Plaintiffs allege that the decision to terminate them was irrevocably made before any of the procedures guaranteed by the bylaws took place, and that the people appointed to hear evidence and make rulings at the hearings, with the exception of the Medical Executive Committee, were all members of the Board interested in protecting Hospital from breaching its newly signed contract.

In late January, 1990, Doctors served a Request for Production of Documents on Hospital. Hospital objected to the request upon multiple grounds, including reference to the privilege provisions of the Indiana Peer Review Statute. Doctors filed a Motion to Compel production of the documents. In support of the Motion, Doctors submitted an affidavit by Ray which included 28 exhibits. The affidavit chronicled Ray's dealings with Hospital and its committees during the relevant time period and the exhibits consisted of the relevant correspondence between the parties and other related documents. The Motion asked for production of eight items, which are summarized as follows: all minutes of the Board of Trustees, Executive Committee, and subcommittees for a three-year period; all documents relating to the physicians benefiting from the new exclusive contract; calendars, diaries, telephone records and related items of Stephens and three other Board members; minutes of the Medical Executive Committee, Credentials Committee, Medical Care Evaluation Committee, and Radiology Department pertaining to radiological services and personnel; and rules, regulations, procedures and policies relating to operation and management of the radiology department. Hospital, citing the Peer Review Act, responded with a Motion to Strike the Ray affidavit and the accompanying exhibits.

The trial court denied plaintiffs' Motion to Compel and granted Hospital's Motion to Strike as to specific paragraphs of the Ray affidavit and corresponding exhibits, and in doing so relied upon the Act. The trial court did not conduct any *in camera* review of the individual documents to determine whether the privilege applied to each document sought to be protected.

Doctors sought and were granted interlocutory appeal from these orders pursuant to Indiana Appellate Rule 4(B)(6). The issue upon appeal is whether the trial court erred in denying Doctors' Motion to Compel and granting Hospital's Motion to Strike based upon the privilege provisions of the Indiana Peer Review Act.

## Standard of Review

■ In reviewing requests for the production of documents in light of claims of privilege, we apply the abuse of discretion standard. *Richey v. Chappell* (1991) 1st Dist. Ind.App., 572 N.E.2d 1338, 1339. Under this standard, we will reverse the trial court only when it has reached a conclusion which is clearly erroneous and against the logic and effect of the facts of the case. *Id.*

■ In reviewing for abuse of discretion, our inquiry is shaped by the relevant scope of the trial court's review of Hospital's decision. Absent a sufficiently close nexus between the State of Indiana and Hospital to demonstrate the presence of state action, a trial court may not utilize an arbitrary and capricious standard in reviewing a private hospital's decision to restrict staff privileges. *Pepple v. Parkview Memorial Hosp., Inc.* (1989) Ind., 536 N.E.2d 274, 276. We are bound by that unanimous decision.[1] However, where a hospital's bylaws constitute part of the employment contract between a hospital and its physicians, the trial court may review such a decision to determine whether it complied with the procedures set forth in its bylaws. *Id.*

■ In the present case, Doctors have not alleged state action and appear in their brief to accept that Hospital is private. Therefore, the trial court's review was limited to the question whether the procedures followed in arriving at the decision to terminate Doctors' hospital privileges were consistent with the provisions of the hospital bylaws. Thus we have before us the task of deciding whether the trial court abused its discretion in applying the peer review privilege to its procedural review of the case.

## Relevance

The Motion to Compel was filed pursuant to Indiana Trial Rule 26(B)(1), which provides: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject-matter involved in the pending action...." Thus, the threshold question is whether the information sought was relevant to any issues in the dispute in light of the fact that the trial court was limited to a review of the procedural aspects of Hospital's decision. *See Frank v. Trustees of Orange County Hosp.* (1988) 1st Dist. Ind.App., 530 N.E.2d 135, 137. Hospital argues that the information sought is not relevant because it involves the substantive reasons justifying its decision to terminate plaintiffs and does not shed light on the issue of whether it complied with its bylaws. Hospital misconstrues the relevance of the information in Hospital's hands with respect to the matters in issue.

■ Procedural rights created in a hospital's bylaws may constitute contractual rights. *Pepple, supra,* 536 N.E.2d at 276. A staff physician is entitled to judicial review to determine whether the hospital has followed the procedural guarantees of its bylaws. *Id.* In conducting such review, the test is one of substantial rather than strict compliance. *Stiller v. La Porte Hosp., Inc.* (1991) 3rd Dist. Ind.App., 570 N.E.2d 99, 103.

Here, Doctors have alleged and Hospital does not dispute that Hospital's bylaws constitute a part of its employment contract with Doctors. Doctors challenge the procedures leading to their termination in several respects. However, their claims appear to center around three principal factors. First, they assert that Hospital acted for economic reasons outside the scope of the criteria set forth in the bylaws as grounds for corrective action. Second, they assert that Hospital's decisions were irrevocably made when the substitute exclusive services contract with the new radiology group was concluded, and therefore, that the proceedings mandated by the

---

**1.** The court cited with approval Judge Ratliff's concurrence in *Kiracofe v. Reid Memorial Hosp.* (1984) 1st Dist. Ind.App., 461 N.E.2d 1134, 1141–44. The concurrence detailed factors which would justify a court in concluding that a privately owned hospital might nevertheless have a sufficient nexus to state and federal governments to warrant a finding of state action, thereby triggering due process protections. *Pepple,* 536 N.E.2d at 276, n. 1.

bylaws, which occurred only afterwards, did not present Doctors with any real opportunity to affect the decision-making process. Third, they assert that the proceedings which did take place were flawed because the persons charged with judging Doctors' claims had economic conflicts of interest due to their association with Hospital's Board.

In *Stiller, supra,* physician-plaintiff sought review of hospital-defendant's revocation of his staff privileges pursuant to a bylaw provision that "the Governing Board may affirm the report and recommendation of the Executive Committee if 'the findings, conclusions, and report and recommendation of the Executive Committee are supported by substantial and reliable evidence[.]' " *Id.* at 105. The court held that this provision empowered the trial court to review the Executive Committee report to determine whether it was supported by substantial and reliable evidence so as to justify the action of the Governing Board. *Id.*

██ Here, Doctors allege that the Board failed to follow criteria set forth in Articles VI and VII of the bylaws in revoking their staff privileges.[2] We express no opinion as to whether these provisions apply to plaintiffs' case and if so, whether Hospital complied with them. However, we hold that the trial court had a duty to review these claims. Just as the *Stiller* court reviewed to determine whether the evidence adduced by the Executive Committee was sufficient to justify the action of the Governing Board, so here, the trial court should have reviewed to determine whether Hospital followed the criteria set forth in the bylaws to govern corrective actions, if such criteria are applicable to the present dispute.

██ Doctors also state a valid claim in alleging that Hospital made its decisions prior to the occurrence of the proceedings guaranteed by the bylaws. We note initially that normal rules of statutory construction may be utilized in construing hospital

bylaws. *Keskin v. Munster Medical Research Foundation* (1991) 1st Dist. Ind. App., 580 N.E.2d 354. We interpret statutory provisions in the context of the entire act in order to determine the legislative intent and to achieve the goals, reasons and policies underlying the statute. *In re Middlefork Watershed Conservancy Dist.* (1987) 1st Dist. Ind.App., 508 N.E.2d 574, 577.

Because this is an interlocutory appeal, a full-scale interpretation of the bylaws would be premature. However, some observations are appropriate. The procedural guarantees of the bylaws are clearly intended to limit the discretion of Hospital to hire and fire at will. For example, section 5.2–2 provides criteria to be used as the basis of a privileges determination. It provides: "Requests for clinical privileges shall be evaluated on the basis of the member's education, training, experience, demonstrated professional competence and judgment, clinical performance, and the documented results of patient care and other quality review and monitoring with [sic] the medical staff deems appropriate." Record at 62. Section 6.1–1 enumerates grounds upon which corrective action may be requested, stating:

"Whenever the activities or professional conduct of any practitioner with clinical privileges are considered to be lower than the standards or aims of the medical staff, or to be disruptive to the operations of the hospital, or to make inefficient or ineffective use of hospital resources, corrective action ... may be requested...." Record at 67.

We express no opinion as to the effect these provisions may have on the facts of this case. However, it is clear that the bylaws' procedural requirements are designed to impact the Board's ultimate determination in a corrective action proceeding. It would seem that Hospital would not have created bylaw procedures if it intended its decision-making authority to be

2. Article VI deals with the procedure for Corrective Action, including Summary and Automatic Suspension. Article VII concerns the procedures and considerations applicable to the right to Hearing and to Appellate Review.

wholly discretionary.[3]

Finally, Doctors allege that the members of the committees issuing reports and recommendations were biased due to an economic conflict of interest. We have held that a physician must demonstrate actual bias in order to disqualify an administrative tribunal. *Kiracofe v. Reid Memorial Hosp.* (1984) 1st Dist. Ind.App., 461 N.E.2d 1134, 1141. On the other hand, Section 7.1–1 of the bylaws provides that the composition of the committees making recommendations and decisions not be in "direct economic competition with the physician." Record at 71. We express no opinion as to whether this provision sets forth a more strict standard than that expressed in *Kiracofe*. On the facts of this case, either or both standards may apply; however, the issue is clearly reviewable under either standard.

Hospital would have us hold that such review constitutes the kind of "substantive" review which courts are barred from making. However, the distinction between "substantive" and "procedural" review in this context is overly semantic. Procedural review is not limited to an inquiry as to whether the hearings took place. The fact that the bylaws guarantee hearings and review pre-supposes that the procedures are calculated to affect the decision-making process. If decision-making criteria are enumerated in the bylaws to govern corrective actions (a determination to be made by the trial court), then the parties must have intended that the criteria be followed and enforced. Similarly, if conflict of interest standards for the review panels are set forth, then the parties must have intended to ensure the impartiality of the people making recommendations to the Board. To limit our review as Hospital suggests would eviscerate all review by the trial court, making hospital bylaws effectively unenforceable.

In essence, Doctors seek discovery of documents relating to 1) the pro-

cedures and criteria employed by various committees in handling the matter; 2) information regarding the quality of care of the Radiology Department; and 3) the newly formed exclusive contract and the extent of Hospital's financial commitment to the alternative source of radiological services. In light of the preceding discussion, the request was clearly calculated to discover evidence relevant to the subject-matter involved in the pending action within the meaning of Trial Rule 26(B)(1). Moreover, the Ray affidavit and its accompanying exhibits are clearly relevant upon these issues as well.

### *The Peer Review Act*

Because the documents sought and evidence offered were relevant, we squarely face the question whether the evidence was privileged under The Indiana Peer Review Act. The Act defines a peer review committee as a committee responsible for evaluating the "qualifications of professional health care providers, or of patient care rendered by professional health care providers, or of the merits of a complaint against a professional health care provider that includes a determination or recommendation concerning the complaint." I.C. 34–4–12.6–1(c) (Burns Code Ed.Supp.1991) "Evaluation of patient care" is defined as relating to:

> "(1) The accuracy of diagnosis; (2) The propriety, appropriateness, quality or necessity of care rendered by a professional health care provider; and (3) The reasonableness of the utilization of services, procedures, and facilities in the treatment of individual patients. As used in this chapter, the term does not relate to charges for services or to methods used in arriving at diagnoses." I.C. 34–4–12.6–1(b) (Burns Code Ed.Supp.1991)

We have given a broad interpretation of the scope of the peer review privilege. In *Terre Haute Regional Hosp. v. Basden* (1988) 1st Dist. Ind.App., 524 N.E.2d 1306,

---

**3.** In the *Keskin* case, *supra,* the First District held that a bylaw provision identical to that of Article VI, before us, was inapplicable. That decision, however, focused upon the facts there present and should not be construed to limit the application of the procedural safeguards only to instances involving alleged medical incompetence.

1311, this court declined to create a bad faith exception to the privilege. Our First District also refused to apply a balancing test to determine whether privileged information may nevertheless be discoverable upon a showing of exceptional need.[4] In *Frank v. Trustees of Orange County Hosp.* (1988) 1st Dist. Ind.App., 530 N.E.2d 135, 138, the same District concluded that there were no subject matter limitations on communications connected with the peer review process.

The limits of this broad language were tested in *Keskin, supra,* 580 N.E.2d 354. In *Keskin,* hospital defendant had an exclusive contract for the performance of anesthesiology services with Associated. Keskin was a member of the medical staff for eight of the ten years preceding the suit but was never a member of Associated and therefore, was never allowed to practice anesthesiology at the hospital. When Keskin tried to secure the hospital's permission to practice on an individual basis, the hospital's board of directors passed a motion limiting its anesthesiology department to persons affiliated with Associated. Keskin filed suit, alleging that the hospital's refusal to allow him to practice on grounds of the exclusive contract was improper. In ruling upon the applicability of the Indiana Peer Review Statute to Keskin's claim, the court stated:

> "Hospital's reasons for its exclusive arrangement with Associated did not relate to Keskin's qualifications to render medical care; rather, the Contract was ostensibly based on Hospital's desire for efficiency and the orderly functioning of its

anesthesiology department. Moreover, [the immunity provisions of] I.C. § 34–4–12.6–3 support[ ] our determination. The immunity provision protects 'evaluation of patient care,' not contractual arrangements by a hospital's board of directors." 580 N.E.2d at 357.

Implicit in the *Keskin* court's reasoning is the admonition of our supreme court that a privilege should not be "distorted by application in circumstances *where the policy behind the rule is not served.*" (Emphasis in original.) *Collins v. Bair* (1971) 256 Ind. 230, 268 N.E.2d 95, 98. Mindful of this caveat, privileges should be applied only in a manner and in instances consistent with their purposes.

We have held that the purpose of the peer review privilege is to foster an effective review of medical care. *Terre Haute Regional Hosp., supra,* 524 N.E.2d at 1311. This holding is consistent with construction of the statute. *Keskin, supra.* Therefore, in examining a claim of peer review privilege, we will protect all communications relating to the review of patient care, whether they are formally made in review proceedings or made in private in such a way as to shape the opinions of the persons charged with peer review. *Frank, supra,* 530 N.E.2d at 137. We will also protect statements regarding a physician's qualifications and statements addressing the merits of a complaint against a physician. I.C. 34–4–12.6–1(c). However, we will not protect communications that do not relate to any of these three areas.[5] Such protection would ex-

---

**4.** The argument was based upon our interpretation of the scope of the accountant-client privilege in *Ernst and Ernst v. Underwriters Nat'l Assurance Co.* (1978) 2d Dist., 178 Ind.App. 77, 381 N.E.2d 897, 899.

**5.** The Indiana Hospital Association, in an amicus brief, argues that "evaluation of patient care," as defined by I.C. 34–4–12.6–1(b), encompasses such matters as the coverage of particular departments (i.e. the scheduling of staff to ensure the presence of specialists at all times), working relationships within the medical staff, and other matters relevant to the level of patient care at the hospital. Amicus Brief at 9. In support of its contention, Association cites language in *Frank* that "[t]here is no subject matter

limitation of the privilege." *Frank, supra,* 530 N.E.2d at 138. Taken in context, this language states that there are no subject matter limitations *on statements made within the peer review process.* This conclusion merely begs the question of what is "within the peer review process." We decline to adopt the broad definition of the term "evaluation of patient care" advocated by Association. I.C. 34–4–12.6–1(b) is precise in its definition of the term. To the extent that there is room for doubt, a narrow reading is appropriate, since the term provides the basis for an evidentiary privilege. Certainly, employees are terminated in other areas of important public interest for reasons similar to those mentioned above without application of privileges. In any event, simple contract disputes are clearly be-

pand the privilege beyond its intended scope and unfairly impede the truth finding process. As our supreme court has forcefully stated, the purpose of privileges is not to suppress the truth. *Collins, supra,* 268 N.E.2d at 98.

In the instant case, Stephens sent a letter to Ray informing him that Stephens had requested corrective action pursuant to section 6.6–1 of the bylaws. Stephens states as his grounds for the request the following:

> "In order to avoid disruption to the operations of the Medical Center and inefficient or ineffective use of Medical Center resources, in order to implement the March 10 resolution, and in order to assure the furtherance of quality health care and the provision of the best patient care, I request corrective action.... This request is not a challenge to the professional skill, competence, or services of Dr. Ray. Nor is this request addressed to the question whether to terminate [AnRad] contract and enter a contract with a new group. Those decisions have already been made and implemented." Record at 318.

On the other hand, in a letter addressed to AnRad, Stephens stated that Hospital had identified "a number of problems including problems relating to the coverage of the Department, the working relationship between your physicians and the Saint John's Medical Staff, and certain issues of professional capability." Record at 299.

Even on this barely developed record, there is an apparent conflict as to whether Hospital was motivated primarily by economic or professional service considerations.[6] Thus, it is unclear whether the information sought, in whole or in part, dealt with review of medical care or contractual considerations. It is possible that much if not most of the information sought was privileged. However, we have no way to determine whether this is the case, since there was never an *in camera* inspection of the documents. Hospital's mere claim of privilege is not sufficient to sustain the broad finding that all the documents in question were privileged. The Board of Trustee minutes alone sought by Doctors encompassed a period of three years.

Blanket claims of privilege are not favored. As stated in *Peterson v. U.S. Reduction Co.* (1989) 3rd Dist. Ind.App., 547 N.E.2d 860, 862:

> "The party seeking to avoid discovery has the burden of establishing the essential elements of the privilege being invoked. (Citation omitted.) The claim of privilege must be made and sustained on a question-by-question or *document-by-document basis.*" (Emphasis in original.)

Our supreme court has recently held in the context of the physician-patient privilege that a bare assertion of a claim of privilege will not suffice to block discovery. Rather, the trial court must review the contested materials to determine whether the privilege applies. *Canfield v. Sandock* (1990) Ind., 563 N.E.2d 526, 531. The court nevertheless expressed concern that *in camera* review could overburden trial courts, and cautioned that the procedure should not be utilized in every instance. We have attempted to give effect to those concerns. In *Burr v. United Farm Bureau Mut. Ins. Co.* (1990) 4th Dist. Ind. App., 560 N.E.2d 1250, 1255, this court held:

> "In cases involving large numbers of documents or where the nature of the document will not likely be readily appar-

---

yond the purview of the definition. *Keskin, supra.*

**6.** It is noteworthy, however, that the only evidence cited by Hospital and Associated in support of Hospital's theory that it was motivated by issues of patient care is the Stephens letter addressed to AnRad. Hospital never asserted these reasons in the corrective action against Doctors, so far as the record reveals. Instead, Hospital asserted that the only issues at Ray's hearing would be whether the Board had a substitute exclusive services contract, whether it issued the March 10 Resolution, whether Ray's continued presence would violate the Resolution, and whether the Board was arbitrary and capricious for terminating his privileges on these facts. Thus, one may doubt, and indeed one would expect Doctors to doubt, that the underlying issues of patient care were critical in the corrective action proceedings.

ent on its face to the uninitiated observer, the proponent of the ... protection must present the matter *in camera* to the court in a reviewable form which itemizes each document, provides a factual summary of its contents, and justification for withholding it.... [The] disclosure ... must be so complete and understandable [that] the trial court need not (but may at its option) do any further research or review of other papers on the subject to clarify anomalous language contained in counsel's disclosing document."

Where a party claiming privilege abuses the process by submitting a mass of documents for the court's review, the judge, as a matter of discretion, may deny the request of protection out of hand in the interests of judicial economy. *Id.* Where the party seeking discovery issues a "shotgun" request that is unduly general, the court may avoid wading through documents by finding the items to be inspected not set forth with reasonable particularity, as required by Ind. Trial Rule 34(B). *See Richey v. Chappell* (1991) 1st Dist. Ind. App., 572 N.E.2d 1338, 1339. Finally, the court may sanction a party who asserts a meritless claim of privilege or disputes a clearly meritorious one under Ind. Trial Rule 37(A)(4). *See Canfield, supra,* 563 N.E.2d at 531. Given these procedural safeguards, we do not believe that imposing upon the trial court a duty to view contested claims of privilege *in camera* will unduly waste judicial resources.

Here, Hospital's sole evidentiary basis for its claim of privilege was the Stephens affidavit, which stated that plaintiff was the subject of "peer review committee activity" that involved the "evaluation of patient care" rendered by each physician. On the other hand, Doctors brought forth evidence, some inconsistent, to support their theory that Hospital acted out of economic concerns and that Stephens had a conflict of interest. Under these circumstances, the trial court had a duty to dig behind the labels Hospital put on its documents and the conclusory statements contained in the Stephens affidavit. The court should have conducted an *in camera* review on a document-by-document basis to determine whether the materials sought were protected by the peer review privilege. Hospital may not insulate itself from judicial review simply by stamping the words "Privileged Peer Review Material" on its files.[7]

Since the trial court upheld Hospital's broad claims of privilege without verifying them by conducting a document review, we vacate the trial court's findings of privilege and remand for an *in camera* inspection of all documents over which Hospital continues to assert the peer review privilege. We express no opinion as to whether Hospital's other asserted grounds of privilege and non-discoverability apply.

The order denying discovery and granting Hospital's Motion to Strike is hereby vacated and the cause is remanded for further proceedings not inconsistent with this opinion.

SHIELDS and SHARPNACK, JJ., concur.

---

7. Hospital points out that none of Stephens's testimony was contradicted by competent testimony. Obviously, it would be difficult for Doctors to present competent testimony to contradict the Stephens affidavit without having an opportunity to conduct discovery upon the process. That is, after all, the point of discovery.