## COMMUNITY HOSPITALS OF INDIANAPOLIS, INC., Appellant–Defendant,

v.

## MEDTRONIC, INC., NEURO DIVISION, Appellee–Defendant,

**and**

## Frank C. Cornelius and Cathy Cornelius, Appellees– Plaintiffs.

No. 06A01–9110–CV–317.

Court of Appeals of Indiana, First District.

April 15, 1992.

Publication Ordered June 15, 1992.

Mary Nold Larimore, Nancy Menard Riddle, Ice Miller Donadio & Ryan, Indianapolis, for appellant-defendant.

Peter L. Obremskey, Carol Sparks Drake, Parr, Richey, Obremskey & Morton, Lebanon, R. Lawrence Purdy, Maslon Edelman Boreman & Brand, Minneapolis, Minn., for appellees-plaintiffs.

ROBERTSON, Judge.

Community Hospitals of Indianapolis, Inc., brings this interlocutory appeal from an order which granted Medtronic, Inc., Neuro Division's motion to compel the production of certain documents during discovery. Community Hospitals claims the order was erroneous because the documents involved were privileged. We reverse and remand with instructions.

■ This Court applies an abuse of discretion standard when it reviews a trial court ruling on a discovery issue. *Richey v. Chappell* (1991), Ind.App., 572 N.E.2d 1338. An abuse of discretion occurs when the trial court reaches a conclusion against the logic and natural inferences to be drawn from the facts of the case. *Id.* (quoting *DeMoss Rexal Drugs v. Dobson* (1989), Ind.App., 540 N.E.2d 655).

Frank C. and Cathy Cornelius filed a tort complaint against Medtronic for injuries to Frank, an outpatient at Community Hospitals, caused by a certain neuromuscular stimulator sold by Medtronic. The complaint alleges that the stimulator was in a defective condition and was unreasonably

dangerous. As alternative defenses, Medtronic alleges, inter alia, that the negligence of Community Hospitals is responsible for all or part of Frank's injuries and that Community Hospitals misused the product. Through a subsequent request for production[1], directed at Community Hospitals, Medtronic sought discovery of:

All incident reports completed by any person after the incident on May 12, 1989, regarding the alleged overstimulation of plaintiff Frank Cornelius by the Stimulator.

Community Hospitals eventually identified one incident report which was prepared by a licensed staff physical therapist. Community Hospitals claims this report is a communication to a peer review committee and is therefore a privileged communication under Ind.Code 34-4-12.6, Indiana's Peer Review Statute.[2] In support of the trial court's order, Medtronic asserts the report merely documented an unusual hospital occurrence and did not constitute a communication to or record of a peer review committee even though the report happened to be submitted to the quality assurance review process.

The incident report, of course, is not in the record, as Community Hospitals did not provide it to the trial court for an *in camera* review. The complaint, however, alleges:

7. That on or about May 12, 1989, Frank was using the Stimulator as it was intended to be used.

9. That at the time Frank used the Stimulator it was in a defective condition

---

1. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject-matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. Ind.Trial Rule 26(B)(1).

2. The following are subsections of the Statute applicable to this case:

(a) As used in this chapter, "professional health care provider" means:

(1) a physician licensed under IC 25-22.5;

* * * * * *

(3) a hospital licensed under IC 16-10-1;

* * * * * *

(10) a registered or licensed practical nurse licensed under IC 25-23;

* * * * * *

(11) a physical therapist licensed under IC 25-27;

(b) As used in this chapter, "evaluation of patient care" relates to:

* * * * * *

(2) the propriety, appropriateness, quality or necessity of care rendered by a professional health care provider ...

* * * * * *

(c) As used in this chapter, "peer review committee" means a committee having the responsibility of evaluation ... of patient care rendered by professional health care providers, or of the merits of a complaint against a professional health care provider that includes a determination or recommendation concerning the complaint. The committee must meet the following criteria:

(1) The committee is organized:

* * * * * *

(D) by a governing board of a hospital ...

* * * * * *

(2) At least fifty percent (50%) of the committee members are:

(A) individual professional health care providers [or] the governing board of a hospital ...

I.C. 34-4-12.6-1.

(a) All proceedings of a peer review committee shall be confidential. All communications to a peer review committee shall be privileged communications. Neither the personnel of a peer review committee nor any participant in a committee proceeding shall reveal any content of communications to, the records of, or the determination of a peer review committee outside the peer committee ...

* * * * * *

(h) Except in cases of required disclosure to the professional health care provider under investigation, no records or determinations of, or communications to a peer review committee shall be:

(1) subject to subpoena or discovery; or

(2) admissible in evidence;

in any judicial or administrative proceeding ... without a prior waiver executed by the committee.

* * * * * *

(i) Except in cases as authorized in this chapter, the evidentiary privileges created by this section shall be invoked by all witnesses and organizations in all judicial and administrative proceedings unless the witness or organization first has a waiver of the privilege executed in writing, on behalf of the peer review committee holding the privilege, by its chairman, vice chairman, or secretary.

I.C. 34-4-12.6-2.

and unreasonably dangerous to Frank. As a result of the defective condition of the Stimulator, Frank's leg was shocked and he was.

(R. 11). The record does not clearly show whether the licensed physical therapist, a "professional health care provider" under I.C. 34–4–12.6–1(a)(11), rendered any care to Frank when the stimulator was used. The complaint states that Frank used the stimulator. The complaint does not appear to claim the injury resulted from the care rendered by the physical therapist but from the defective condition of the stimulator when Frank used it on himself.

Nevertheless, Medtronic alleges, as defenses, that all or part of Frank's injuries are due to Community Hospitals' negligence and misuse of the product. As a result of Medtronic's allegations, the conduct of Community Hospitals, a "professional health care provider" under I.C. 34–4–12.6–1(a)(3), is at issue. The physical therapist's incident report deals directly with the "evaluation of patient care" contemplated by I.C. 34–4–12.6–1(b)(2) in that it addresses the quality of care rendered by Community Hospitals with regard to the events which occurred at the hospital and which lead up to Frank's alleged injuries. This is true regardless of whether Frank ultimately administered the stimulator treatment to himself.

■ We have given broad interpretation of the scope of the peer review privilege. *Ray v. St. John's Health Care Corp.* (1991), Ind.App., 582 N.E.2d 464, 472. The purpose of the peer review privilege is to foster an effective review of medical care. *Terre Haute Regional Hosp. v. Basden* (1988), Ind.App., 524 N.E.2d 1306. While this court has concluded that there is no subject matter limitation on the privilege, *Frank v. Trustees of Orange County Hosp.* (1988), Ind.App., 530 N.E.2d 135, the privilege should not be applied where the policy behind the rule is not served, *Ray,* 582 N.E.2d at 471 (quoting *Collins v. Bair* (1971), 256 Ind. 230, 268 N.E.2d 95).

■ The application of the privilege in the circumstances here would serve to foster an effective review of medical care.

Medtronic has called the acts or omissions of Community Hospitals itself into question through allegations of negligence and misuse. If the Quality Assurance Council is, in fact, a "peer review committee" under the Statute, then Community Hospitals, as a "professional health care provider," should benefit from its peers' evaluation of the patient care it rendered. These peers would be professional health care providers, including physicians and registered nurses, or members of the governing board. *See* I.C. 34–4–12.6–1(a)(1); I.C. 34–4–12.6–1(c)(2)(A).

In support of its contention that the methods used constitute a "peer review committee," Community Hospitals filed an affidavit of Judy Easley, R.N., Director, Patient Care Evaluation for Community Hospitals, as follows:

\* \* \* \* \* \*

3. I am employed as the Director, Patient Care Evaluation of Community Hospitals of Indiana, Inc., and as such am a member of Community Hospitals' Quality Assurance Council.

4. The Quality Assurance Council and Quality Assurance Department are involved in retrospective quality of care review and recommending and monitoring corrective action.

5. Community Hospitals' Quality Assurance Council and Quality Assurance Department are organized by the governing board of Community Hospitals and are part of its peer review committee structure.

6. All incident reports are forwarded to and are reviewed by the Quality Assurance Department. Those reports which may need further evaluation are forwarded to me as Director, Patient Care Evaluation.

7. As Director, Patient Care Evaluation, I meet weekly with the Chairman of the Quality Assurance Council to discuss incident reports from a quality care aspect.

8. More than 50% of the Quality Assurance Council and the Quality Assurance Department of Community Hospitals of Indiana, Inc. is composed of professional

health care providers, including physicians and registered nurses, and members of the hospital's governing board. 9. All incident reports are retained in the Quality Assurance Department for review by inhouse counsel in connection with potential litigation against the hospital.

\* \* \* \* \* \*

Thus, the Easley affidavit showed a process and a structure through which Community Hospitals addressed quality assurance. Employees of Community Hospitals generate incident reports. They forward these reports to the Quality Assurance Department. If the reports need further evaluation, they proceed to the Director, Patient Care Evaluation; if not, they remain in the Quality Assurance Department for possible review by in-house counsel in connection with potential litigation. The Director, Patient Care Evaluation discusses those incident reports forwarded to her with the Chairman of the Quality Assurance Council.

The Quality Assurance Council has the responsibility for the "evaluation of patient care." I.C. 34–4–12.6–2(c). Those in the Quality Assurance Department serve the committee, and therefore are "personnel of a peer review committee" contemplated by I.C. 34–4–12.6–1(e).[3] Incident reports that relate to quality assurance are submitted to the Quality Assurance Department. We presume incident reports on other subjects do not go there. The "evaluation of patient care" relates to the quality of care rendered. I.C. 34–4–12.6–1(b)(2). The Quality Assurance Council has responsibility for quality assurance and therefore has responsibility for the quality of care rendered by the hospital. We conclude that the submission of an incident report about quality of care to the Quality Assurance Department is just the sort of event the privilege Statute covers.

The Easley affidavit also showed that the governing board of Community Hospi-

tals organized this structure as a part of its peer review committee and that more than fifty percent (50%) of the structure is composed of professional health care providers, including physicians and registered nurses, and of members of the governing board. The structure therefore complies with the provisions of I.C. 34–4–12.6–1(c)(1) and (2). The Quality Assurance Council therefore qualifies as a "peer review committee" under the statute.

■ All communications to a peer review committee shall be privileged communications. I.C. 34–4–12.6–2(a). The party which seeks to avoid discovery has the burden to establish the essential elements of the privilege being invoked. *Ray v. St. John's Health Care Corp.* (1991), Ind.App., 582 N.E.2d 464 (quoting *Peterson v. U.S. Reduction Co.* (1989), Ind.App., 547 N.E.2d 860). As noted, Community Hospitals is a "professional health care provider." Moreover, the incident report here deals directly with the "evaluation of patient care" regarding the care rendered by Community Hospitals. Further, the Quality Assurance Council is a "peer review committee." We conclude that Community Hospitals met the initial burden to show that the incident report fell within the peer review privilege.

In response to this showing, Medtronic came forward with no evidence to show the incident report did not, in fact, fall within the privilege. Medtronic now claims it is incredulous to suggest that all the incident reports generated at Community Hospitals, including the subject report, are prepared as communications to a peer review committee. As stated above, however, Medtronic's defenses called the conduct of Community into question and the incident report here deals directly with the "evaluation of patient care" in that it addresses the quality of care rendered by Community Hospitals with regard to the events which lead up to Frank's alleged injuries. Again, if an incident report did not relate to quality assurance, we presume it would not be

---

**3.** As used in this chapter, "personnel of a peer review committee" means not only members of the committee but also all of the committee's employees, representatives, agents, attorneys, investigators, assistants, clerks, staff, and any other person or organization who serves a peer review committee in any capacity.

submitted to the Quality Assurance Department. With its defenses addressed to conduct, Medtronic can be said to have brought Community Hospitals within the purview of the incident report and thereby made it the subject of peer review. Moreover, the Easley affidavit states that incident reports are, in fact, generated as a part of the peer review structure. In light of this, Medtronic should have come forward with some evidence to show the incident report in question was not a peer review communication.

Medtronic also claims that, to the extent there is any doubt concerning whether the privilege applies, a narrow reading of the Statute is appropriate because application of the privilege suppresses truth. As noted, however, this Court has given a broad interpretation of the scope of the peer review privilege as long as the privilege is not expanded beyond its intended scope and does not unfairly impede the truth finding process. *Ray*, 582 N.E.2d at 472–473. Medtronic had independent access to the information known to the physical therapist.[4] Community Hospitals claims that Medtronic, in fact, deposed her. Further, the methods used by Community Hospitals allowed its peers to evaluate patient care rendered by the hospital, an effective review of medical care. The application of the privilege here does not expand it beyond its intended scope or unfairly impede the truth finding process.

■ Medtronic did not rebut the initial showing that the incident report from the physical therapist was a communication to the peer review committee and therefore was privileged. Such a communication is not subject to discovery in a judicial proceeding absent a prior, written waiver. *Terre Haute Regional Hosp.*, 524 N.E.2d at 1312. Medtronic has produced no such waiver. Therefore, the trial court's conclu-

sion, that Community Hospitals should be ordered to produce the incident report, is against the logic and natural inferences to be drawn from the facts of the case. The trial court's judgment and order were erroneous and an abuse of discretion.

■ Community Hospitals also claims that the order of the trial court requires it to produce documents not requested by Medtronic in its motion to compel production. Specifically, Medtronic requested:

[a]ll incident reports completed by any person after the incident on May 12, 1989, regarding the alleged overstimulation of plaintiff Frank Cornelius by the Stimulator.

The trial court, however, ordered Community Hospitals to:

turn over copies of all incident reports and investigations pertaining to electric shock experienced by Plaintiff Frank C. Cornelius on May 12, 1989, at Community Hospital [sic], including but not limited to the report prepared on May 16, 1989 ...

The trial court thus ordered Community Hospitals to produce copies of its investigations as well as its incident reports. Medtronic acknowledges that the order is inconsistent with its request and is appropriate for correction on remand. The trial court is therefore instructed to correct its order to produce documents by removing that portion which also orders the production of investigations.

Judgment reversed and cause remanded with instructions.

RATLIFF, C.J., and BAKER, J., concur.

---

4. Information that is otherwise discoverable or admissible from original sources shall not be construed as immune from discovery or use in any proceeding merely because it was presented during the proceedings before a peer review committee. A member, employee, agent of a committee or other person appearing before the committee may not be prevented from testifying as to matters within the person's knowledge and in accordance with the other provisions of this chapter. However, a witness cannot be questioned about this testimony or other proceedings before the committee or about opinions formed by the witness as a result of the committee hearings.
I.C. 34–4–12.6–2(c).