**H. Michael MANN, M.D.,**
**Appellant–Plaintiff,**

v.

**JOHNSON MEMORIAL HOSPITAL; Board of Trustees of Johnson Memorial Hospital; Charles E. Bechman, Trustee; Loren O. Blaase, Trustee; Thomas J. McClain, Trustee; Orris A. Hughes, Trustee; Hugh K. Andrews, Trustee; and Norbert G. Smith, Appellees–Defendants.**

**No. 73A04–9202–CV–37.**

Court of Appeals of Indiana,
Fourth District.

April 6, 1993.

Rehearing Denied May 21, 1993.

Richard A. Mann, Mann & Deeter, Indianapolis, for appellant-plaintiff.

Frederick Wm LaCava, LaCava, Zeigler & Carter, Indianapolis, Brian J. Deppe, LaGrange, Fredbeck & Deppe, Franklin, for appellees-defendants.

CHEZEM, Judge.

*Case Summary*

Plaintiff–Appellant, H. Michael Mann (Dr. Mann), appeals from the trial court's denial of his complaint for declaratory judgment and injunction against Defendant–Appellee, Johnson Memorial Hospital (Hospital). We reverse and remand.

*Issue*

Dr. Mann presents three (3) issues for review. Because we reverse the trial court on Dr. Mann's primary issue, we consider only one issue: whether the Hospital's peer review process complies with the Indiana Peer Review Act.

*Facts and Procedural History*

The Hospital's Board of Trustees (Board) held an executive session on August 5, 1991. At that meeting, charges were brought against Dr. Mann, head of the Hospital's Anesthesiology Department. The charges sought to terminate Dr. Mann's medical staff privileges. This ter-

mination, if completed, would have to be reported to the Indiana Medical Licensing Board. Pursuant to its bylaws, the Board appointed an ad hoc committee to hear the evidence against Dr. Mann. On September 4, 1991, Dr. Mann obtained a temporary restraining order against the Hospital. Additionally, Dr. Mann sought a judgment declaring the Hospital's bylaws contrary to Indiana law and a permanent injunction enjoining the Hospital from enforcing its bylaws. On November 8, 1991, the trial court denied Dr. Mann's claims.

## Discussion and Decision

■ Dr. Mann appeals a negative judgment from a declaratory and injunctive action. When reviewing an appeal from a negative judgment, we will reverse only if the judgment is contrary to law. *Aetna Casualty & Surety Co. v. Crafton* (1990), Ind.App., 551 N.E.2d 893. A negative judgment is contrary to law only when the evidence is without conflict and all reasonable inferences to be drawn therefrom lead to but one result and the trial court has reached a different result. *Id.*

■ Dr. Mann claims the trial court's judgment is contrary to state law concerning the peer review process required of hospitals. Specifically, Dr. Mann argues the Hospital bylaws do not conform to the requirements of state statutes in that the bylaws do not require the peer review hearing committee to be comprised solely of members of the medical staff. Dr. Mann contends the Hospital's bylaws are contrary to Indiana Code 34-4-12.6-2(e), which states that if charges are brought against a professional health care provider in a hospital, the "provider is entitled to one (1) evidentiary hearing before a peer review committee of the medical staff...." Dr. Mann argues the Hospital's bylaws (specifically Article III, Section 3.1-2(A) and Article IV) are contrary to the language of the Indiana peer review statute because the bylaws provide for an adverse hearing before only an ad hoc committee which could be composed entirely of members not of the medical staff. We agree.

Indiana Code 34-4-12.6-2(e) states,

However, if charges are brought against a professional health care provider in a hospital that, if sustained by the governing board of the hospital, could result in an action against a physician required to be reported to the medical licensing board under IC 16-10-1-6.5(b) or a similar disciplinary action against any other health care provider, the professional health care provider is entitled to one (1) evidentiary hearing before a peer review committee of the medical staff and one (1) additional hearing on appeal before the governing board of the hospital.

Dr. Mann is a professional health care provider as defined under IC 34-4-12.6-1. The Hospital brought charges against Dr. Mann that could be required to be reported to the Indiana Medical Licensing Board. The Hospital chose to proceed with these charges against Dr. Mann under their bylaws. Specifically, the Hospital chose to proceed under Article III, Section 3.1-2(A)(3) of its bylaws, which states in pertinent part:

Whenever the professional review action could lead to a reduction or suspension of clinical privileges for a member, the Board of Trustees in its discretion, may ... (3) appoint an Ad Hoc Hearing Committee as provided in Section 4.5 and proceed directly to a hearing as provided in Article IV.

Section 4.5 states in pertinent part:

The Ad Hoc Hearing Committee may include ... members of the Board of Trustees, the Hospital Administrator and/or other persons in Hospital Administration, ... members of the Medical Staff, ... practitioners who are not members of the Medical Staff....

The Hospital's bylaws (Article II, Section 2.2) state that its peer review procedure is "instituted pursuant to ... IC 34-4-12.6-1 *et seq.*" Indiana's peer review statute, however, does not define the term "medical staff." The statute does recognize that the term "medical staff" is different from a local organization of professional health care providers, the professional staff of the hospital or another health care facility, a governing board of the hospital, or a com-

mittee of the board of the hospital. IC 34–4–12.6–1(c)(1)(A–G). In addition, Article I of the Hospital's bylaws defines "medical staff" as the following: "MEDICAL STAFF ... means all licensed practitioners who through formal appointment as members of the Medical Staff are thereby privileged to attend patients in the Hospital."

Hospital argues, and the trial court found, that the Board's Corrective Action Plan, which was offered to Dr. Mann, complies with the standards set forth in the federal Health Care Quality Improvement Act of 1986 (HCQIA). The Hospital further contends the HCQIA is dispositive of the rights given to Dr. Mann by law. The HCQIA provides that if a hearing is requested by a physician subject to a peer review action, the hearing shall be held, "(i) before an arbitrator ... (ii) before a hearing officer ... or (iii) before a panel of individuals who are appointed by the entity...." 42 U.S.C. § 11112(b)(3). The HCQIA does not specify any type of individuals which should be appointed by the entity.

However, a reading of the HCQIA and its legislative history demonstrates Congress' recognition of a state's right to further ensure procedural safeguards to physician. In addressing the construction to be given the federal act, Section 11115(a) states,

Except as specifically provided in this subchapter, nothing in this subchapter shall be construed as changing the liabilities or immunities under law or as preempting or overriding any State law which provides incentives, immunities, or protection for those engaged in a profes-

sional review action that is in addition to or greater than that provided by this part.

Further, the legislative history for this section reads in part: "[O]ther applicable law determines the extent to which due process is required with regard to an action by a health care entity." *Health Care Quality Improvement Act of 1986*, H.R.Rep. No. 99–903, 99th Cong., 2d Sess., p. 12 (1986) in 6 U.S.Code Cong. & Admin.News 6395 (1986). Finally, the primary purpose of the HCQIA is to provide immunity for physicians engaged in effective professional peer review. The standards set out in Section 11112 of the act are those standards that are to be employed if members of a peer review committee wish to protect themselves from liability for private money damages. In other words, if the peer review committee members wish to enjoy immunity, the standard for their actions must meet the minimum standards proscribed in Section 11112. Nothing in the HCQIA states that these procedures limit the state's statute provisions.

While we express some reservations about the limitation of participants in a peer review committee in an evidentiary hearing, we note that Congress expressed these same reservations when considering the HCQIA. *Id.*, p. 11 at 6393. The Indiana legislature, for its own reasons, chose to entitle physicians to one evidentiary hearing before a peer review committee of the medical staff. With no further direction or definition in the Indiana statute and with no direction from subsequent case law,[1] we follow the plain language of the

---

1. Our search lead us to a limited number of cases which discuss Ind.Code 34–4–12.6. None of these cases were applicable to the facts and problem presented by this case: *King v. Bartholomew Co. Hosp.* (1985), Ind.App., 476 N.E.2d 877 (hospital justified in requiring medical staff applicants to execute absolute immunity and release of liability clauses for those aiding in the hospital credentialing process); *Parkview Memorial Hosp., Inc. v. Pepple* (1985), Ind.App., 483 N.E.2d 469 (confidentiality provision of Peer Review Act not limited to medical malpractice cases); *Pepple v. Parkview Memorial Hosp., Inc.* (1987), Ind.App., 511 N.E.2d 467 (privileged communications of a peer review committee may be used for internal business purposes or

one's defense); *Friedman v. Memorial Hosp. of South Bend* (1988), Ind.App., 523 N.E.2d 252 (hospital board immune from liability for acts taken in good faith and good faith is presumed); *Terre Haute Regional Hosp. v. Basden* (1988), Ind.App., 524 N.E.2d 1306 (disclosure of information involving communications of a peer review committee prohibited); *Frank v. Trustees Orange Co. Hosp.* (1988), Ind.App., 530 N.E.2d 135 (information on events in a peer review process is privileged and privilege is not violative of due process rights); *Keskin v. Munster Medical Research Foundation* (1991), Ind.App., 580 N.E.2d 354 (peer review act's immunity provision protects "evaluation of patient care",

statute. Dr. Mann is entitled to an evidentiary hearing before a peer review committee comprised of the medical staff.

Thus, we find Section 4.5 of the Hospital's bylaws too broad and contrary to law. The Indiana peer review statute clearly entitles the charged health care provider to an evidentiary hearing before the medical staff. The Hospital's bylaws specifically allow for an evidentiary hearing before a Board-appointed committee which could include no members of the medical staff. In fact, the Hospital does not argue, nor does it appear, they appointed a committee which was comprised of medical staff. Further, by the Hospital's own bylaws, they were obligated to follow the Indiana statute on peer review. Their bylaws allowed for a procedure contrary to the statute while their own definition of "medical staff" is consistent with the requirements of the statute. However, the Hospital could not substantially comply with its own bylaws because the bylaws conflict with the statute.

Reasonable inferences lead us to one result: the Hospital's bylaws, to the extent the bylaws allow the Hospital and/or the Board to appoint non-medical staff to the peer review committee, are contrary to law. The parties have stipulated to the proof of irreparable harm to Dr. Mann if the Hospital's bylaws were found contrary to state statute. Therefore, we reverse the trial court's denial of declaratory judgment and its denial of a permanent injunction against the Hospital from appointing a peer review committee comprised of non-medical staff. We remand to the trial court for an order and judgment consistent with this opinion.

Reversed and Remanded.

HOFFMAN, J., concurs.

MILLER, J., concurs in result.

not contractual arrangements by a hospital's board); *Ray v. St. John's Health Care Corp.* (1991), Ind.App., 582 N.E.2d 464 (to uphold communication privilege, court should verify by conducting a review); *Community Hospitals of* *Indianapolis v. Medtronic* (1992), Ind.App., 594 N.E.2d 448 ("Quality Assurance Council" which reviewed incident reports qualified as personnel of a peer review committee).