ROBERTSON, Judge.
 

 Defendants-Appellants, Dale R. Mulder and Royale Healthcare, Inc., and Intervenor-Appellant, St. Joseph’s Hospital of Hunting-burg, Inc., [collectively referred to as Mulder] bring this interlocutory appeal of the trial court’s rulings on discovery motions in the defamation action brought by Plaintiff-Ap-pellee, Phillip W. VanKersen. Mulder asserts the matters sought to be discovered are privileged communications under Indiana’s Peer Review Statute. We agree and reverse.
 

 FACTS
 

 The pertinent facts are not disputed. VanKersen works at the Hospital as a registered nurse certified to administer anesthesia. He is a nonphysician affiliate member of the medical staff on the Hospital having obtained clinical privileges to render anesthesia services through the Hospital’s credentialing process. He had worked at the hospital for seventeen years at the time this dispute arose and had enjoyed a good reputation.
 

 In February of 1992, a surgical technician of the Hospital reported jo the director of the operating room that VanKersen had reported to work smelling of marijuana almost daily over the previous couple of months. The surgical technician also reported that VanKersen had mood swings. The alleged observations were reported up the chain of command and ultimately to Mulder, who is employed as the chief executive officer of the Hospital.
 

 The surgical technician was instructed that if he smelled marijuana on VanKersen again, he was to report it. In May of 1992, the technician reported that he again smelled marijuana-on VanKersen.
 

 On May 20, 1992, the medical staff executive committee of the Hospital held its regularly-scheduled, monthly meeting. Present at this meeting were five physician members of the executive committee and Mulder, who is a nonphysician member of the executive committee. Although the .medical staff bylaws require that minutes be kept at these meetings, no minutes of this meeting were kept. In addition to other business, VanKer-sen’s situation was discussed at the meeting.
 

 Immediately after the meeting, one of the physicians on the committee, VanKersen’s best friend, informed VanKersen of what transpired at the executive committee meeting. On June 15,1992, VanKersen’s attorney sent Mulder a “cease and desist” letter. The letter alleged that Mulder stated to the executive committee that “there were complaints that [VanKersen] was smoking marijuana.” After receiving the letter, Mulder memorialized in writing the nature of his communications to the executive committee during the May 20, 1992, meeting. That memorandum
 
 *1333
 
 has not been shown to anyone except Mulder’s attorneys.
 

 On June 18, 1992, the surgical technician again reported that VanKersen reported to work smelling of marijuana. VanKersen was requested, in a confidential manner, to submit to a drug screening test. Ultimately VanKersen submitted to two drug tests, both of which came back negative for illegal drugs. The only drug detected by the drug screens was nicotine from cigarette smoking.
 

 VanKersen obtained the deposition of Dr. Ciccarelli regarding a telephone conversation between Mulder and Dr. Ciccarelli in July of 1992. Dr. Ciccarelli was not a member of the executive committee and had no peer review responsibilities. Mulder informed Ciccarelli that VanKersen’s staff privileges had been suspended for a week. Further, Mulder stated that he would obtain an affidavit from someone who smelled marijuana on VanKersen, that VanKersen would be required to submit to drug tests, and that ultimately VanKersen would be prohibited from working at the hospital. VanKersen had obtained additional evidence that Mulder had discussed the situation outside of the peer review process.
 

 VanKersen filed the present defamation action alleging that Mulder stated to the executive committee that “[VanKersen] had been seen smoking marijuana in the doctor’s lounge on two occasions and that [VanKer-sen’s] behavior [was] erratic.” In order to prove his claim, VanKersen subpoenaed the persons present at the meeting in order to take their depositions. All the members of the committee deposed invoked the peer review privilege and refused to testify regarding the discussion of VanKersen’s situation. VanKersen also sought to discover the memorandum Mulder had written memorializing the discussion at the meeting. But, Mulder similarly relied on the peer review privilege in refusing to produce the memorandum.
 

 VanKersen filed a motion to compel the committee members to respond to the deposition questions and subpoenaed the production of Mulder’s memorandum. Mulder filed a motion to quash the subpoena. On September 21, 1993, the trial court conducted a hearing on the discovery motions. The trial court granted VanKersen’s motion and denied Mulder’s motion. The trial court entered the following findings (pertinent part only) in support of its decision:
 

 4. That the peer review statute does not apply to this case, since the meeting in question did not constitute a Peer Review Committee.
 

 5. Further, that even if the May 20, 1992 meeting can be construed to constitute a Peer Review Committee, any actions or communications at such meeting are not protected by the statute since the requirements of confidentiality were breached.
 

 6. That the written memorandum prepared by Mr. Mulder was admittedly not prepared as part of the peer review process, but rather in response to a letter from plaintiff’s attorney, and is thus outside the peer review statute.
 

 This interlocutory appeal ensued. Additional facts are supplied as necessary.
 

 DECISION
 

 When reviewing a trial court’s ruling on discovery matters, we apply the abuse of discretion standard.
 
 Community Hospitals v. Medtronics, Inc.
 
 (1992), Ind.App., 594 N.E.2d 448. An abuse of discretion occurs when the trial court reaches a conclusion against the logic and natural inferences to be drawn from the facts of the case.
 
 Id.
 

 In general, parties may obtain discovery of any nonprivileged matter relevant to the subject matter involved in the pending action. Ind.Trial Rule 26(B);
 
 Frank v. Trustees of Orange County Hospital
 
 (1988), Ind.App., 530 N.E.2d 135. The party seeking to avoid discovery has the burden to establish the essential elements of the privilege being invoked.
 
 Community Hospitals,
 
 594 N.E.2d 448.
 

 Indiana Code 34-4-12.6-2 provides for the confidentiality of peer review communications and the peer review privilege as follows:
 

 (a) All proceedings of a peer review committee shall be confidential. All communications to a peer review committee shall be privileged communications. Nei
 
 *1334
 
 ther personnel of a peer review committee nor any participant in a committee proceeding shall reveal any content of communications to, the records of, or the determination of a peer review committee outside the peer committee. ...
 

 (b) Except as otherwise provided in this chapter, no person who attends a peer review committee proceeding shall be permitted or required to disclose any information acquired in connection with or in the course of a proceeding, any opinion, recommendation, or evaluation of the committee or of any committee member.
 

 * * * * * *
 

 (g) Communications to, the records of, and determinations of a peer review committee ... shall otherwise be kept confidential for use only within the scope of the committee’s work, unless the professional health care provider has filed a prior written waiver of confidentiality with the peer review committee.
 

 (h) Except in cases of required disclosure to the professional health care provider under investigation, no records or determinations of, or communications to a peer review committee shall be:
 

 (1) subject to subpoena or discovery; or
 

 (2) admissible in evidence; in any judicial or administrative proceeding ... without a prior waiver executed by the committee.
 

 (i) Except in cases as authorized in this chapter, the evidentiary privileges created by this section shall be invoked by all witnesses and organizations in all judicial and administrative proceedings unless the witness or organization first has a waiver of the privilege executed in writing, on behalf of the peer review committee holding the privilege, by its chairman, vice chairman, or secretary.
 

 The purpose of the peer review privilege is to foster an effective review of medical care.
 
 Ray v. St. John’s Health Care Corporation
 
 (1991), Ind.App., 582 N.E.2d 464,
 
 trans. denied.
 
 Therefore, in examining a claim of peer review privilege, we will protect all communications relating to the review of patient care, whether they are formally made in review proceedings or made in private in such a way as to shape the opinions of the persons charged with peer review.
 
 Id.
 

 We broadly interpret the scope of the peer review privilege.
 
 Ray,
 
 582 N.E.2d 464. However, we will not apply the privilege where the policy behind the rule is not served.
 
 Id.
 

 I.
 

 Whether Mulder’s statements regarding VanKersen’s alleged illegal drug use at the May 20, 1992 hospital executive committee meeting constitute communications to a peer review committee?
 

 A “peer review committee” means:
 

 a committee having the responsibility of evaluation of qualifications of professional health care providers, or of patient care rendered by by professional health care providers, or of the merits of a complaint against a professional health care provider that includes a determination or recommendation concerning the complaint. The committee must meet the following criteria:
 

 (1) The committee is organized:
 

 (B) by the professional staff of a hospital, ...;
 

 ifc :}: ífc sfc sfc
 

 (2) At least fifty percent (50%) of the committee members are:
 

 (A) individual professional health care providers, the governing board of a hospital or professional health care organization, ...
 

 I.C. 34-4-12.6-Kc).
 

 In the present case, the executive committee of the Hospital is specifically authorized by the Hospital bylaws to initiate medical staff corrective or review measures when warranted. The executive committee is specifically designated as the committee to which reports should be made about the conduct and performance of a professional health care provider with hospital privileges. Thus, the executive committee of the Hospital has the responsibility of evaluating the qualifications of professional health care providers or of patient care rendered by profes
 
 *1335
 
 sional health care providers as required by I.C. 34-4-12.6-l(e).
 

 Moreover, the executive committee of the Hospital was organized by the medical staff of the Hospital, pursuant to the Hospital by-laws, to represent and to act on behalf of the medical staff. As it was organized by the professional staff of a hospital, I.C. 34-4-12.6 — 1(e)(1)(B) has been satisfied. Each committee member, with the exception of Mulder, was a physician. A physician is, by definition under the statute, a professional health care provider. I.C. 34r4-12.6-l(a)(l). As fifty percent of the committee members were individual professional health care providers, I.C. 34-4-12.6-1 (c)(2)(A) has been satisfied. Therefore, the executive committee of the hospital was a peer review committee within the meaning of the statute and communications to the committee within the scope of the peer review privilege are entitled to protection.
 

 VanKersen argues the defamatory communications at the May 20, 1992, executive committee meeting were outside the scope of the peer review privilege because they have no direct tie to an evaluation of patient care. We reject this argument out of hand.
 

 VanKersen, as a registered nurse, is a professional health care provider as defined by I.C. 34r4-12.6-l(a)(10). Communications to the executive committee that a health care provider has been alleged to have been under the influence of marijuana while on the job directly impacts upon his capability to render quality patient care. Thus, the alleged communications regarding VanKersen at the May 20, 1992, meeting were clearly within the scope of the peer review privilege.
 

 Finally, VanKersen argues that since the executive committee failed to take the minutes of the May 20, 1992 meeting, as required by the hospital by-laws, the communications at this meeting have been stripped of the peer review privilege. Even informal communications made in private between persons charged with peer review are protected.
 
 Ray,
 
 582 N.E.2d 464.. The failure to take minutes at the meeting did not change the peer review character of the communications and did not strip the communications of the privilege.
 

 II.
 

 Whether Mulder’s memorandum memorializing the communications regarding VanKersen at the executive committee meeting is protected by the peer review privilege?
 

 Mulder’s memorandum is simply a personal record of the communications in question, which we have determined are protected by the peer review privilege. The notes made by an attorney memorializing communications between the attorney and his client are protected under the attorney-client privilege.
 
 Green v. IRS
 
 (N.D.Ind. 1982), 556 P.Supp. 79,
 
 affirmed,
 
 (7th Cir.1984), 734 F.2d 18. Therefore, by analogy, we hold that Mulder’s memorandum memorializing the privileged communications to the executive committee are protected under the peer review privilege.
 

 III.
 

 Whether Mulder’s communication to the executive committee has been stripped of its privilege because Mulder breached the Peer Review Statute’s requirement of confidentiality by discussing VanKersen’s situation with persons who did not have peer review responsibilities?
 

 In support of this argument, VanKersen cites I.C. 34-4-12.6-2(m) which reads:
 

 The
 
 immunities
 
 granted by section 3 of this chapter shall not extend to any person who violates the confidentiality requirements of this section.
 

 (Emphasis added). Section 3 (I.C.
 
 34r-4r-
 
 12.6-3), referred to above, provides broad
 
 immunities
 
 for persons with peer review responsibilities. Thus, under I.C. 34-4-12.6-2(m) a member of a peer review committee who breaches the confidentiality of a peer review communication may be stripped of the
 
 immunities
 
 afforded under the statute.
 

 The peer review privilege may only be waived by the execution of a waiver in writing as prescribed by I.C. 34-4-12.6-2(g) through I.C. 34-4-12.6-2®. Without a writ
 
 *1336
 
 ten waiver, a hospital does not waive the peer review privilege even though some of the communications may have been leaked outside the peer review proceedings.
 
 Terre Haute Regional Hospital v. Basden
 
 (1988), Ind.App., 524 N.E.2d 1306. Therefore, a breach of confidentiality does not cause the peer review
 
 privilege
 
 to be waived.
 

 CONCLUSION
 

 Based on the above, the matters sought to be discovered by VanKersen are protected by the peer review privilege. Therefore, they are not subject to discovery and the trial court abused discretion in its ruling on the discovery motions. We reverse and remand with instructions that the trial court grant Mulder’s motion to quash and to deny VanKersen’s motion to compel.
 

 Judgment reversed.
 

 NAJAM and RILEY, JJ., concur.